CONVALESCENT CENTER OF BLOOMFIELD, INC., ET AL.
*v.* DEPARTMENT OF INCOME MAINTENANCE
(13311)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and SANTANIELLO, Js.

Argued May 6—decision released July 5, 1988

*Kenneth A. Graham,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*Lewis K. Wise,* with whom, on the brief, was *Kenneth A. Zitter,* for the appellees (plaintiffs).

PETERS, C. J. The central issue in this appeal is whether a litigant is collaterally estopped from rearguing an issue that was adversely decided in an administrative proceeding not subject to judicial review. The plaintiffs, Convalescent Center of Bloomfield, Inc., and Maple View Manor, Inc., brought an administrative action pursuant to General Statutes § 17-314[1] to contest

---

[1] General Statutes § 17-314 provides in relevant part: "RATES OF PAYMENT TO CHRONIC AND CONVALESCENT HOSPITALS, REST HOMES, HOMES FOR THE AGED AND RESIDENTIAL FACILITIES FOR THE CARE OF THE MENTALLY RETARDED. REGULATIONS. RECOVERY OF EXCESS PAYMENTS. (a) The rates to be paid by or for persons aided or cared for by the state or any town in this state to licensed chronic and convalescent hospitals, rest homes with nursing supervision and to licensed homes for the aged, as defined by section 19a-490, and to residential facilities for the mentally retarded which are licensed pursuant to section 19a-467 and certified to participate in the Title XIX Medicaid program as intermediate care facilities for the mentally retarded, for room, board and services specified in licensing regulations issued by the licensing agency shall be determined annually, except

the manner in which the defendant, the department of income maintenance, had calculated their entitlement to rental reimbursement for Medicaid patients. The defendant disallowed this action as an impermissible relitigation of similar claims that the plaintiffs had previously pursued with regard to their Medicare patients. An appeal from the defendant's decision was sustained by the trial court, which held that the Medicare ruling could not be given preclusive effect because that ruling, involving an amount less than $10,000, was afforded no judicial review under applicable federal law. The defendant appealed to the Appellate Court, and we transferred the case here. We find no error.

There is no dispute about the relevant facts. The plaintiffs operate nursing homes that are provider par-

as otherwise provided in this subsection, after a public hearing, by the commissioner of income maintenance, to be effective July first of each year except as otherwise provided in this subsection. Such rates shall be determined on a basis of a reasonable payment for such necessary services, which basis shall take into account as a factor the costs of such services. Cost of such services shall include (1) reasonable costs mandated by collective bargaining agreements with certified collective bargaining agents or other agreements between the employer and employees, provided 'employees' shall not include persons employed as managers or chief administrators or required to be licensed as nursing home administrators, and (2) compensation for services rendered by proprietors at prevailing wage rates, as determined by application of principles of accounting as prescribed by said commissioner. All such facilities shall report on a fiscal year basis ending on the thirtieth day of September. For the cost reporting year commencing October 1, 1985, and for subsequent cost reporting years, facilities shall report the cost of using the services of any nursing pool employee by separating said cost into two categories, the portion of the cost equal to the salary of the employee for whom the nursing pool employee is substituting shall be considered a nursing cost and any cost in excess of such salary shall be further divided so that seventy-five per cent of the excess cost shall be considered an administrative or general cost and twenty-five per cent of the excess cost shall be considered a nursing cost, provided if the total nursing pool costs of a facility for any cost year are equal to or exceed fifteen per cent of the total nursing expenditures of the facility for such cost year, no portion of nursing pool costs in excess of fifteen per cent shall be classified as administrative or general costs. The commissioner, in determining such rates, shall also take into account the classification of patients or

ticipants both in the Title XVIII Medicare program, administered by the United States department of health and human services, and the Title XIX Medicaid program, administered by the Connecticut department of income maintenance. The plaintiffs contend that, as a result of certain stock transfers in 1976, they became entitled to rental reimbursements for payments made to allegedly unrelated realty companies. Both the federal Medicare and the state Medicaid agencies have rejected this contention, and have limited the plaintiffs' reimbursements, in accordance with the related party principle, to the actual costs incurred by the related organization.

The plaintiffs elected to pursue this disagreement by first seeking relief with regard to their Medicare reim-

boarders according to special care requirements or classification of the facility according to such factors as facilities and services and such other factors as he deems reasonable, including anticipated fluctuations in the cost of providing such services. The commissioner may establish a separate rate for a facility or a portion of a facility for traumatic brain injury patients who require extensive care but not acute general hospital care. Such separate rate shall reflect the special care requirements of such patients. If changes in federal or state laws, regulations or standards adopted subsequent to June 30, 1985, result in increased costs or expenditures, the commissioner shall adjust rates and provide payment for any such increased reasonable costs or expenditures within a reasonable period of time retroactive to the date of enforcement. Nothing in this section shall be construed to require the department of income maintenance to adjust rates and provide payment for any increases in costs resulting from an inspection of a facility by the department of health services. Such assistance as the commissioner requires from other state agencies or departments in determining rates shall be made available to him at his request. Payment of the rates established hereunder shall be conditioned on the establishment by such facilities of admissions procedures which conform with this section, section 19a-533 and all other applicable provisions of the law and the provision of equality of treatment to all persons in such facilities. The established rates shall be the maximum amount chargeable by such facilities for care of such beneficiaries, and the acceptance by or on behalf of any such facility of any additional compensation for care of any such beneficiary from any other person or source shall constitute the offense of aiding a beneficiary to obtain aid to which he is not entitled and shall be punishable in the same manner as is provided in subsection (b) of section 17-83i.''

bursements. Disallowance of their claims for reimbursement of rental expenses was upheld by a Medicare intermediary hearing panel and then by the Health Care Financing Administration (HCFA) of the United States department of health and human services. Because the amount in controversy was less than $10,000,[2] the plaintiffs had no opportunity to seek judicial review of the Medicare decision. See 42 U.S.C. § 1395oo (a) (1).[3]

After they had exhausted their federal Medicare remedies, the plaintiffs requested a rehearing on their Medicaid reimbursements for their rental expenses. The defendant refused to consider the merits of the plaintiffs' claim, ruling instead that the plaintiffs were collaterally estopped from pursuing a Medicaid rate

[2] The Medicare claim of the named plaintiff amounted only to $5081 and that of Maple View Manor, Inc., amounted only to $2899.

[3] "[42 U.S.C.] § 1395oo PROVIDER REIMBURSEMENT REVIEW BOARD
"(a) Establishment
"Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board (hereinafter referred to as the 'Board') which shall be established by the Secretary in accordance with subsection (h) of this section, if—
"(1) such provider—
"(A) is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report,
"(B) has not received such final determination from such intermediary on a timely basis after filing such report, where such report complied with the rules and regulations of the Secretary relating to such report, or
"(C) has not received such final determination on a timely basis after filing a supplementary cost report, where such cost report did not so comply and such supplementary cost report did so comply,
"(2) the amount in controversy is $10,000 or more, and
"(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1) (A) or with respect to appeals pursuant to paragraph (1) (B) or (C), within 180 days after notice of such determination would have been received if such determination had been made on a timely basis."

appeal because of the HCFA decision rendered against them in their Medicare rate appeal.

The trial court upheld the plaintiffs' appeal from the defendant's decision and remanded for an administrative hearing on the merits. The court concluded that collateral estoppel was inappropriate in light of the absence of an opportunity for judicial review of the HCFA decision. The validity of this conclusion is the only issue that the defendant has raised in its appeal.

I

Before we reach the collateral estoppel issue, we must decide whether this appeal is properly here. Because the trial court ordered a remand of this case for further administrative proceedings, we must inquire into the possibility that there has not as yet been a final judgment. "Under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., further appellate review of superior court rulings on administrative appeals is limited to cases in which the Superior Court has rendered a final judgment. General Statutes § 4-184. That statutory provision accords with the general proposition that, except in special cases, such as appeals upon reservations; *State* v. *Sanabria*, 192 Conn. 671, 681–85, 474 A.2d 760 (1984); or upon certification pursuant to General Statutes § 52-265a; *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984); the jurisdiction of this court is restricted to appeals from judgments that are final. General Statutes § 52-263; Practice Book § 3000 (now § 4000); *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 255, 520 A.2d 605 (1987); *Doublewal Corporation* v. *Toffolon*, 195 Conn. 384, 388–89, 488 A.2d 444 (1985)." *Schieffelin & Co.* v. *Department of Liquor Control*, 202 Conn. 405, 408–409, 521 A.2d 566 (1987).

In *Schieffelin & Co.*, we held that administrative appeals are governed by the rule of *State* v. *Curcio*, 191

Conn. 27, 463 A.2d 566 (1983), which permits the immediate appeal of interlocutory orders only "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. Because a trial court judgment that orders further administrative proceedings has not "terminate[d] a separate and distinct proceeding," the operative question is "whether the trial court's order 'so concludes the rights of the parties that further proceedings cannot affect them.' " *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 409–10.

In resolving that question in *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 410, we found it helpful to inquire into whether the administrative ruling "is in some fashion incomplete and therefore not ripe for final adjudication." *Schieffelin & Co.* involved an attempt by the plaintiff to terminate liquor distributorships, in accordance with the requirements of General Statutes § 30-17 (a) (2) (B), by sending written notices setting forth "just and sufficient cause." The administrative agency had denied the plaintiff relief on the ground that its notice was procedurally inadequate, without determining whether the plaintiff had sustained its burden of establishing good cause for the terminations. The trial court, sustaining the plaintiff's appeal with regard to the procedural adequacy of its notice, remanded for administrative adjudication of the issue of good cause. We held that, in the absence of a complete adjudication of the plaintiff's right to terminate the distributorships, the trial court's interlocutory ruling was not an immediately appealable final judgment. Id., 411–12.

*Schieffelin & Co.* distinguished the administrative ruling that "is in some fashion incomplete"; id., 410; from one involving a final resolution of an issue that is ripe for appellate judicial review. For the latter category,

we relied on *Watson* v. *Howard,* 138 Conn. 464, 469, 86 A.2d 67 (1952), which concluded that the trial court had rendered a final judgment when it ordered a new administrative hearing because of illegal procedures in the prior administrative adjudication. We also cited *Santos* v. *Publix Theatres Corporation,* 108 Conn. 159, 161, 142 A. 745 (1928), which held that appeals could immediately be taken from trial court judgments concerning awards of compensation, whether or not such judgments involved remands for further action by the compensation commissioner.

In the circumstances of the present case, we view the issue of collateral estoppel as ripe for immediate appellate review. Further proceedings on the substantive merits of the plaintiffs' claim for rental reimbursement cannot affect the rights of the parties with respect to collateral estoppel. Indeed, to postpone appellate review and to require further exhaustion of administrative remedies would defeat the very purpose that collateral estoppel is intended to serve. "[T]he basic proposition . . . has always been essentially the same: A party should not be allowed to relitigate a matter that it already had opportunity to litigate." F. James & G. Hazard, Civil Procedure (3d Ed. 1985) p. 589. If the defendant is correct that the plaintiffs are precluded from relitigating their entitlement to reimbursement, it would be unfair to require the defendant to expend its resources to defeat the plaintiffs' claims on the merits. We have held an interlocutory order to be final for purposes of appeal if it involves a claimed right " 'the legal and practical value of which would be destroyed if it were not vindicated before trial.' " *State* v. *Powell,* 186 Conn. 547, 553, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982), quoting *United States* v. *MacDonald,* 435 U.S. 850, 860, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978); *State* v. *Curcio,* supra, 34. In

this respect, the defense of collateral estoppel is a civil law analogue to the criminal law's defense of double jeopardy, because both invoke the right not to have to go to trial on the merits. Like the case of a denial of a criminal defendant's colorable double jeopardy claim, where immediate appealability is well established; *State* v. *Curcio*, supra; *State* v. *Moeller*, 178 Conn. 67, 72, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979); the present judgment denying the defendant's claim of collateral estoppel is a final judgment.

## II

Whether access to judicial review is a necessary precondition to administrative collateral estoppel is a matter of first impression. As a general proposition, the governing principle is that administrative adjudications have a preclusive effect when "the parties have had an adequate opportunity to litigate." *United States* v. *Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1965). That standard was met, in *Utah Construction & Mining Co.*, because "the factual disputes resolved were clearly relevant to issues properly before [the administrative agency], and both parties had a full and fair opportunity to argue their version of the facts *and an opportunity to seek court review of any adverse findings.*" (Emphasis added.) Id. Subsequent cases that have relied on *Utah Construction & Mining Co.* to apply the doctrines of collateral estoppel and res judicata to the decisions of administrative agencies have involved parties who in fact had access to judicial review. See, e.g., *University of Tennessee* v. *Elliott*, 478 U.S. 788, 106 S. Ct. 3220, 3227, 92 L. Ed. 2d 635 (1986); *Kremer* v. *Chemical Construction Corporation*, 456 U.S. 461, 480–84, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *Kirkland* v. *Peekskill*, 828 F.2d 104, 109 (2d Cir. 1987); *Yancy* v. *McDevitt*, 802 F.2d 1025, 1030 n.3 (8th Cir. 1986); *Plaine* v.

*McCabe,* 790 F.2d 742, 749 (9th Cir. 1986); *Board of Trustees* v. *Universal Enterprises, Inc.,* 751 F.2d 1177, 1183 (11th Cir. 1985); *Bowen* v. *United States,* 570 F.2d 1311, 1315, 1322 (7th Cir. 1978); *Painters District Council No. 38* v. *Edgewood Contracting Co.,* 416 F.2d 1081, 1083–84 (5th Cir. 1969); *Smith* v. *Nolan,* 648 F. Sup. 972, 974–75 (N.D. Ill. 1986); *Parker* v. *National Corporation for Housing Partnerships,* 619 F. Sup. 1061, 1066 (D.D.C. 1985); *Weed* v. *East Texas Motor Freight Lines, Inc.,* 592 F. Sup. 713, 717 (N.D. Tex. 1983); *Snow* v. *Nevada Department of Prisons,* 543 F. Sup. 752, 756 (D. Nev. 1982); *Gear* v. *Des Moines,* 514 F. Sup. 1218, 1221 (S.D. Iowa 1981); *Zaika* v. *Del E. Webb Corporation,* 508 F. Sup. 1005, 1009 (D. Nev. 1981); *Moore* v. *Allied Chemical Corporation,* 480 F. Sup. 377, 383 (E.D. Va. 1979); *Cunegin* v. *Zayre Department Store,* 437 F. Sup. 100, 103 (E.D. Wis. 1977); *Campbell* v. *Superior Court,* 18 Ariz. App. 287, 290, 501 P.2d 463 (1972); *Umberfield* v. *School District No. 11,* 185 Colo. 165, 169–70, 522 P.2d 730 (1974); *Pullar* v. *UpJohn Health Care Services, Inc.,* 21 Ohio App. 3d 288, 291–92, 488 N.E.2d 486 (1984). In these cases, courts have assigned varied significance to the *availability* of judicial review as an element of "an adequate opportunity to litigate," but were not faced with deciding the consequences of its *unavailability* as a matter of law. Presumably this indeterminacy in the case law reflects the reality that some form of judicial review has come to be the rule for almost all administrative adjudications.

The Restatement of Judgments mirrors the indeterminacy of the prevailing case law. The most directly relevant section is § 83, which provides, in the black letter, that "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court."

2 Restatement (Second), Judgments (1982) § 83 (1), p. 266. Since judicial determinations do not give rise to collateral estoppel, under § 28 (1) of the Restatement, if "[t]he party against whom preclusion is sought *could not, as a matter of law, have obtained review of the judgment* in the initial action"; (emphasis added) 1 Restatement (Second), supra, p. 273; it is plausible to read the same qualification into § 83. The official commentary to § 83 is, however, more ambivalent. Comment (a) states, categorically, that "[i]t is not necessary that the administrative adjudication have been reviewed and affirmed by a court." 2 Restatement (Second), supra, p. 268. That comment may be reconciled with § 28 (1) by observing that the issue is not judicial review and affirmance as a matter of fact, but access to judicial review as a matter of law.[4] Comment (c) to § 83 further muddies the waters in its discussion of those procedural rights that "may be regarded as essential prerequisites of conclusiveness." 2 Restatement (Second), supra, p. 271. In that context, "[t]he right to obtain judicial review may be regarded as of . . . importance, particularly review of questions of subject matter jurisdiction, of the existence of substantial evidence to support the decision, and of the fundamental fairness of the proceeding. The fact that an agency adjudication was subjected to judicial review and was upheld is a factor that supports giving it preclusive effect." 2 Restatement (Second), supra, p. 272. Perhaps the open-endedness of the official commentary to § 83 reflects the perception that judicial review plays a somewhat different role with respect to administra-

---

[4] This distinction is emphasized in comment (a) to § 28 of the Restatement of Judgments. Comment (a) starts out by noting that "the availability of review for the correction of errors has become critical to the application of preclusion doctrine." It goes on to state that the unavailability of judicial review has significance "only when review is precluded as a matter of law . . . [and not] where review is available but is not sought." 1 Restatement (Second), Judgments (1982) § 28, comment (a), p. 274.

tive adjudication than it does in the context of other litigation. On balance, however, we view the Restatement provisions, in their entirety, as casting at least severe doubt on the propriety of attaching preclusive effect to an administrative adjudication that, as a matter of law, permits no judicial review of any kind. See also 1B J. Moore, Federal Practice (1984) § 0.416 [5].

The defendant maintains that Connecticut law has established that the availability of judicial review is not an absolute prerequisite to collateral estoppel in the analogous context of arbitration awards. The defendant reminds us that in *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 318, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973), we declared that "a decision of an administrative board, acting in a duly authorized judicial capacity, is a prior decision within the rule of res judicata." We agree with the defendant that *Corey* established the principle that an administrative adjudication may give rise to res judicata or collateral estoppel. For two independent reasons, we do not, however, agree that *Corey* decided that judicial review is irrelevant to administrative collateral estoppel.

We can draw only limited guidance from *Corey* with regard to the significance of judicial review because the arbitration decision to which *Corey* gave preclusive effect was not a decision entirely outside of the realm of judicial oversight. While judicial scrutiny of arbitral determinations is severely limited by the terms of General Statutes § 52-418; *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* 206 Conn. 643, 650–56, 539 A.2d 125 (1988); *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* 203 Conn. 133, 145–48, 523 A.2d 1271 (1987); it is not entirely nonexistent. See, e.g., *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 585–86, 519 A.2d 1 (1986).

Even more important, the limited judicial scrutiny of arbitral awards finds its justification in the fact that arbitration is ordinarily a creature of contract. "Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings." (Citations omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 145. We have indicated that more extensive judicial review may well be appropriate for an arbitral award that stems from arbitration made compulsory by statute. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 187–88, 530 A.2d 171 (1987); *Stratford* v. *Local 134, IFPTE,* supra, 585; *Carofano* v. *Bridgeport,* 196 Conn. 623, 637–38, 495 A.2d 1011 (1985).

In this case, the plaintiffs had no choice about the administrative route that they were required to pursue in order to obtain review of their claims for Medicare rental reimbursement. That route afforded them no judicial review of any sort. Further, that route was compulsory with respect to Medicare, even though the plaintiffs had other alternatives for pursuit of their Medicaid claims; we do not agree with the defendant that this route became less compulsory because the plaintiffs might have elected first to pursue their Medicaid claims, for which judicial review is available.[5] Finally, despite contrary intimations by the defendant,

---

[5] Judicial review of adverse determinations with respect to Medicaid is provided in this state by General Statutes § 4-183, which provides: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal

the record contains no findings that the plaintiffs were acting in bad faith in electing to litigate their Medicare claims in advance of their Medicaid claims. Viewing these circumstances in their totality, we conclude that the analogy from arbitration suggests that the adverse Medicare decision does not collaterally estop the plaintiffs from a full review of their Medicaid claim.

The defendant maintains that we should nonetheless preclude the plaintiffs from relitigating their rental reimbursement claims because the Medicare hearing, apart from the unavailability of judicial review, met the requirements of due process. The defendant reminds us that the plaintiffs have not alleged that the HCFA decision is void for lack of subject matter jurisdiction, was not based on substantial evidence or violated any procedural requirements of fundamental fairness. In effect, the defendant maintains that unless the plaintiffs are prepared to mount a collateral attack on the validity of the HCFA decision, they are collaterally estopped from relitigating the issues therein determined. We are not persuaded that this is a trade-off that serves the interests of jurisprudence.

Collateral attacks on judgments are disfavored. *Department of Health Services* v. *CHRO,* 198 Conn. 479, 487–89, 503 A.2d 1151 (1986); *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 147, 496 A.2d 476 (1985); *Monroe* v. *Monroe,* 177 Conn. 173, 177, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). Unless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort

statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

to direct proceedings to correct perceived wrongs in the tribunal's conclusive decision. *Lampson Lumber Co.* v. *Hoer,* 139 Conn. 294, 297–98, 93 A.2d 143 (1952). A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. *Ames* v. *Sears, Roebuck & Co.,* 206 Conn. 16, 23–25, 536 A.2d 563 (1988); *Lashgari* v. *Lashgari,* 197 Conn. 189, 200–201, 496 A.2d 491 (1985); *Morabito* v. *Wachsman,* 191 Conn. 92, 99, 463 A.2d 593 (1983); *Glemboski* v. *Glemboski,* 184 Conn. 602, 606, 440 A.2d 242 (1981); *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 551–52, 219 A.2d 225 (1966). Furthermore, principles of comity impose additional constraints on state court modification of federal adjudicatory proceedings. *Gnutti* v. *Heintz,* 206 Conn. 628, 634–36, 539 A.2d 118 (1988); *Santoro* v. *Miklus,* 199 Conn. 179, 189–90, 506 A.2d 549 (1986).

For these reasons, we conclude that it would be inappropriate to denominate a judgment as conclusive for collateral estoppel purposes and yet to invite collateral attack on the merits of such a conclusive judgment. The recurrent theme in our collateral attack cases is that the availability of an appeal is a significant aspect of the conclusiveness of a judgment. We are persuaded that, without the availability of judicial review, neither the decision of an administrative agency nor that of a court is ordinarily entitled to be accorded preclusive effect in further litigation. We do not need to decide today what forms of judicial review may suffice to provide the needed judicial scrutiny of administrative adjudications, or whether preadjudication waiver may dispense with the need for access to judicial review. See, e.g., *Orselet* v. *DeMatteo,* 206 Conn. 542, 539 A.2d 95 (1988). The circumstances of the present case persuade us, as they did the trial court, that the absence of judicial review of the plaintiffs' Medicare claims significantly undermined the conclusiveness of that administrative adjudication and the plaintiffs therefore are

202

not collaterally estopped from pursuing their Medicaid claims.[6]

There is no error.

In this opinion the other justices concurred.

---

[6] The holding in *Johnson Co.* v. *Wharton,* 152 U.S. 252, 256–57, 14 S. Ct. 608, 38 L. Ed. 429 (1894), upon which the defendant relied in oral argument, does not persuade us to the contrary. Subsequent United States Supreme Court cases have not relied on *Johnson Co.* and, in any case, it does not bind us as a matter of Connecticut law.