******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# MICHAEL RUBEN PECK *v.* STATEWIDE GRIEVANCE COMMITTEE
## (AC 42700)

Alvord, Bright and Bear, Js.

*Syllabus*

The plaintiff attorney appealed to this court from the judgment of the trial court dismissing, for lack of subject matter jurisdiction, his appeal from the decision of the defendant Statewide Grievance Committee, which had denied his request to vacate a prior decision by a reviewing committee of the defendant that imposed a disciplinary sanction against him. The plaintiff, who had represented L in a real estate transaction, introduced L to one of the plaintiff's then law partners, O, who was looking to secure a loan for the law firm. In 2001, L loaned the plaintiff's law firm $70,000, and, by 2008, when the law firm had not repaid the loan, the plaintiff and O each executed new notes for repayment of the loan by 2013. In 2011, L filed a grievance complaint against the plaintiff. The reviewing committee concluded in its 2013 decision that the plaintiff violated rule 1.8 (a) of the Rules of Professional Conduct by failing to advise L that he should seek the advice of independent counsel in connection with the loan, and by failing to advise L in writing that he was not acting as his lawyer in connection with the loan and to establish in writing the precise nature of the plaintiff's role in the transaction. The reviewing committee ordered the plaintiff to attend a continuing education course in legal ethics. The defendant thereafter denied the plaintiff's request for review, in which he stated that he accepted the discipline that was imposed and waived any appeal to the Superior Court. Four years later, the defendant declined to act on a motion that the plaintiff filed in 2017, pursuant to *Disciplinary Counsel* v. *Elder* (325 Conn. 378), in which he sought to vacate the disciplinary sanction on the ground that the six year time period in the applicable rule of practice (§ 2-32 (a) (2) (E)) for filing a grievance mandated the dismissal of L's grievance. The defendant also declined to act on the plaintiff's subsequent motion for reconsideration. In granting the defendant's motion to dismiss and rendering judgment for the defendant, the trial court concluded that it lacked subject matter jurisdiction over the appeal because the plaintiff had waived his right to appeal from the disciplinary decision. The court reasoned that the plaintiff could not circumvent his failure to appeal from the disciplinary decision by fashioning his appeal as one stemming from the defendant's denials of his motions to vacate and for reconsideration. On appeal to this court, *held* that the trial court properly granted the defendant's motion to dismiss the plaintiff's appeal as nonjusticiable, as it was an improper attempt to relitigate the defendant's 2013 decision, and the court therefore could afford the plaintiff no remedy; although the court in *Elder* stated that the six year limitation period in Practice Book § 2-32 (a) (2) (E) is mandatory and that untimely claims are barred, that limitation period did not deprive the defendant of subject matter jurisdiction over L's 2011 grievance, as the statutes (§ 51-90 et seq.) governing the filing of a grievance contained neither a period of limitation nor an indication that any limitation period set by the rules of practice could affect the defendant's subject matter jurisdiction, and the plaintiff's challenges to the defendant's rejections of his motions to vacate the 2013 disciplinary order and for reconsideration of that rejection were nothing more than an attempted, impermissible end run to avoid the consequences of his waiver of his right to appeal and failure to appeal four years earlier by using a procedure that is not contemplated by the relevant rules of practice or § 51-90 et seq.

Submitted on briefs March 17—officially released June 16, 2020

*Procedural History*

Appeal from the decision of the defendant denying the plaintiff's request for review and affirming the decision of the defendant's reviewing committee ordering

the plaintiff to attend a legal ethics course as a result of the plaintiff's alleged violation of the Rules of Professional Conduct, brought to the Superior Court in the judicial district of Hartford, where the court, *Sheridan, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*James F. Sullivan* filed a brief for the appellant (plaintiff).

*Leanne F. Larson*, assistant chief disciplinary counsel, filed a brief for the appellee (defendant).

*Opinion*

BRIGHT, J. The plaintiff attorney, Michael Ruben Peck, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant, the Statewide Grievance Committee, on the ground that it lacked jurisdiction to consider the merits of the plaintiff's appeal challenging the sanction imposed against him by the defendant's reviewing committee. The defendant claims that the court committed error. We affirm the judgment of dismissal.

The following facts, as revealed by the record, as well as the relevant procedural history, inform our review. On April 26, 2013, a local reviewing committee (committee) of the defendant issued a decision regarding a grievance complaint that had been filed against the plaintiff on December 29, 2011, by Michael Longo. The committee found that the plaintiff had represented Longo in various legal matters in 1999 and 2000, including the sale of real property in May, 2000. After Longo had informed the plaintiff that it was his intention to lend out the money from the sale, the plaintiff introduced Longo to one of his then law partners, John J. O'Brien, Jr., who was looking for someone to lend money to the law firm to fund a lobbying group. The plaintiff and O'Brien then met with Longo to discuss a loan. The plaintiff did not tell Longo that he was not acting as his attorney in this matter. On March 27, 2001, the law firm secured a $70,000 loan from Longo, which came from the proceeds of the real estate sale in 2000. The loan matured on September 30, 2001, but, as of March 29, 2002, it had not been paid. New notes were executed by the law firm and Longo on March 29, 2002, and on December 15, 2004. The new maturity date was March 31, 2007. As of February 1, 2008, however, the law firm had not paid the loan. Attorney O'Brien then executed a new note with Longo in the amount of $34,335, which required monthly payments and had a maturity date of January 1, 2013. The plaintiff also executed a new note with Longo in March, 2008, in the amount of $32,070, which required monthly payments and had a maturity date of February 1, 2013. The plaintiff neither informed Longo in writing that he should consider seeking the advice of independent counsel nor obtained Longo's written consent. The plaintiff paid his loan on February 6, 2013.

On the basis of these facts, the committee, on April 26, 2013, concluded that the plaintiff's "failure to advise [Longo] in writing that he should consider seeking the advice of independent counsel in connection with the loan of [Longo's] money to the [plaintiff's] law firm constituted a violation of rule 1.8 (a) of the Rules of Professional Conduct. The [plaintiff's] failure to establish in writing the precise nature of his role in this transaction and the [plaintiff's] failure to advise [Longo] in writing that he was not acting as his lawyer in connec-

tion with the March, 2001 loan constituted further violations of rule 1.8 (a) of the Rules of Professional Conduct. . . . We have considered the [plaintiff's] payment of the March, 2008 note as a mitigating factor." The committee, pursuant to Practice Book § 2-37 (a) (5), ordered the plaintiff to attend a continuing legal education course in legal ethics.

The plaintiff timely requested that the defendant review the committee's decision, stating in his request that he "accepts the discipline imposed . . . [and] waives any appeal to the Superior Court." The plaintiff's requested review asked that the defendant insert a finding in the committee's decision stating that, although the plaintiff had failed to inform Longo in writing that he should consider seeking the advice of independent counsel or obtain Longo's written consent, he did inform Longo orally and Longo did obtain such counsel. In a decision dated June 21, 2013, the defendant denied the plaintiff's request. The plaintiff did not appeal to the Superior Court.

On April 30, 2017, nearly four years after the defendant denied the plaintiff's request for review, the plaintiff filed a motion with the defendant asking that it vacate the sanction imposed in its April 26, 2013 decision pursuant to *Disciplinary Counsel* v. *Elder*, 325 Conn. 378, 159 A.3d 220 (2017) (*Elder*). See id., 393 (six year time period for person to file grievance under Practice Book § 2-32 (a) (2) (E) is mandatory; committee must dismiss grievance filed more than six years after attorney's last act or omission forming basis for complaint unless exception in § 2-32 (a) (2) (E) (i) or (ii) applies).[1] On May 9, 2017, the defendant sent a letter to the plaintiff explaining that it would not take action on his motion to vacate. On May 16, 2017, the plaintiff filed a request for review with the defendant, arguing that *Elder* controls this matter. On June 21, 2017, the defendant, again, declined to vacate the sanction. On July 1, 2017, the plaintiff requested that the defendant reconsider its decision, arguing that *Elder* should have retroactive application. On July 26, 2017, the defendant responded that it would "have no further comment on the matter."

On August 21, 2017, the plaintiff filed an appeal with the Superior Court, stating that he was appealing "from the decision of the reviewing committee of the [defendant] and the denial of the [r]equest for [r]eview by the [defendant] in accordance with Practice Book § 2-38 . . . ."[2] The defendant filed a motion to dismiss the appeal on the ground that the court did not have subject matter jurisdiction because the plaintiff's appeal was an attempt to circumvent his failure to appeal from the defendant's 2013 decision. The plaintiff objected to the defendant's motion to dismiss, arguing that he was appealing from the defendant's denials of his motions to vacate and to reconsider. The Superior Court, in a

February 25, 2019 memorandum of decision, granted the defendant's motion to dismiss, concluding that it did not have jurisdiction. The court reasoned that although the plaintiff was fashioning his appeal as one stemming from the defendant's denial of his motions to vacate and to reconsider, because the plaintiff had failed to timely appeal from the committee's sanction order and the defendant's 2013 denial of his motion for review, in which the plaintiff expressly waived his right to appeal to the Superior Court, he could not circumvent this failure by attempting to seek the same relief he could have claimed had he properly and timely appealed in 2013. Accordingly, the court concluded that it had no jurisdiction over the matter. This appeal followed.

The plaintiff claims that the court had jurisdiction because he was timely appealing from the defendant's 2017 refusal to vacate its 2013 sanction order or to reconsider its refusal to vacate that order, rather than from the original 2013 order itself. He argues, as an alternative ground for reversing the judgment of the Superior Court, that the defendant did not have jurisdiction to consider the original 2011 grievance complaint because it alleged wrongdoing that occurred beyond the six year mandatory limitation period set forth in Practice Book § 2-32 (a) (2) (E), as more fully explained in *Elder*.[3] Further, he argues that the authority to open and vacate a prior order is within the defendant's inherent authority and that its refusal to do so is an appealable final judgment, especially when the defendant lacked jurisdiction to enter the original order. We conclude that the period of limitation set forth in § 2-32 (a) (2) (E) is not jurisdictional. Additionally, we agree with the Superior Court that it did not have jurisdiction to consider the plaintiff's appeal because it was an improper attempt to circumvent the fact that the plaintiff waived his right to appeal from the defendant's 2013 sanction order, and he, in fact, failed to appeal from that decision.

Practice Book § 2-32 (a) provides in relevant part: "Any person, including disciplinary counsel, or a grievance panel on its own motion, may file a written complaint, executed under penalties of false statement, alleging attorney misconduct whether or not such alleged misconduct occurred in the actual presence of the court. Complaints against attorneys shall be filed with the statewide bar counsel. Within seven days of the receipt of a complaint, the statewide bar counsel shall review the complaint and process it in accordance with subdivisions (1), (2) or (3) of this subsection as follows . . . (2) refer the complaint to the chair of the Statewide Grievance Committee or an attorney designee of the chair and to a nonattorney member of the committee, and the statewide bar counsel in conjunction with the chair or attorney designee and the nonattorney member shall, if deemed appropriate, dismiss the complaint on one or more of the following grounds

. . . (E) the complaint alleges that the last act or omission constituting the alleged misconduct occurred more than six years prior to the date on which the complaint was filed;

"(i) Notwithstanding the period of limitation set forth in this subparagraph, an allegation of misconduct that would constitute a violation of Rule 1.15, 8.1 or 8.4 (2) through (6) of the Rules of Professional Conduct may still be considered as long as a written complaint is filed within one year of the discovery of such alleged misconduct.

"(ii) Each period of limitation in this subparagraph is tolled during any period in which: (1) the alleged misconduct remains undiscovered due to active concealment; (2) the alleged misconduct would constitute a violation of Rule 1.8 (c) and the conditions precedent of the instrument have not been satisfied . . . ."

The plaintiff argues that our Supreme Court in *Elder* held that the six year period of limitation set forth in Practice Book § 2-32 (a) (2) (E) was not only mandatory "but [was] jurisdictional in nature." We disagree.

In *Elder*, on the basis of a 2014 grievance complaint filed pursuant to Practice Book § 2-32, disciplinary counsel brought a presentment against the defendant attorney in the Superior Court, alleging that he had impersonated another attorney in 2004. See *Elder*, supra, 325 Conn. 384. The defendant filed a motion to dismiss the presentment on the ground that it was barred by the six year period of limitation set forth in Practice Book § 2-32 (a) (2) (E). Id., 385. The trial court denied the motion, concluding that the rule neither affected the court's jurisdiction nor operated as a mandatory period of limitation. Id. Following the court's judgment finding the defendant in violation of the Rules of Professional Conduct, the defendant appealed. Id., 382. On appeal, our Supreme Court determined that the six year period of limitation set forth in Practice Book § 2-32 (a) (2) (E) was mandatory and that a "defendant is not barred from seeking review of those decisions at a later stage of the proceedings, that is, in the proceedings before the grievance panel or reviewing committee, in an appeal of the ultimate decision on the grievance complaint pursuant to Practice Book § 2-38, or in a presentment action brought pursuant to Practice Book § 2-47." Id., 389. The court, however, never stated that the period of limitation is jurisdictional but only that it is mandatory unless one of the exceptions applies.

Although no appellate court in our state has addressed directly whether the period of limitation set forth in Practice Book § 2-32 is jurisdictional, we find instructive the Supreme Court's decision in *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 777 A.2d 645 (2001). See id., 271

(although time limit set forth in General Statutes § 46a-82 is mandatory, it is not subject matter jurisdictional). In *Williams*, our Supreme Court considered whether the statutory 180 day period set forth in § 46a-82 (e) for filing a discrimination complaint with the Commission on Human Rights and Opportunities is subject matter jurisdictional. Id., 259–60. The court held that, although mandatory, "the 180 day time requirement for filing a discrimination petition pursuant to § 46a-82 (e) is not jurisdictional, but rather, is subject to waiver and equitable tolling." Id., 264. The court thoroughly explained the process to be undertaken in analyzing whether a period of limitation is jurisdictional; id., 266; and, therefore, that is where we begin.

"[T]here is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent that such a time limit is jurisdictional." Id. "In [some] cases, the court, in discerning the intent of the legislature, at times [has] *equated* the intent of the legislature to create a mandatory limitation with the intent to create a subject matter jurisdictional limit." (Emphasis in original.) Id., 268. In some other cases, the court "implicitly [has held] that a conclusion that a time limit is mandatory does not necessarily mean that it is also subject matter jurisdictional, because the notions of waiver and consent are fundamentally inconsistent with the notion of subject matter jurisdiction." Id., 269. "[M]andatory language may be an indication that the legislature intended a time requirement to be jurisdictional, [however] such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar. In the absence of such a showing, mandatory time limitations must be complied with absent an equitable reason for excusing compliance, including waiver or consent by the parties. Such time limitations do not, however, implicate the subject matter jurisdiction of the agency or the court." Id., 269–70.

Whether the period of limitation in Practice Book § 2-32 (a) (2) (E) implicates the defendant's subject matter jurisdiction is a question of statutory interpretation. See *Elder*, supra, 325 Conn. 386. "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary. . . . In seeking to determine [the] meaning [of a statute or a rule of practice, we] . . . first . . . consider the text of the statute [or rule] itself and its relationship to other statutes [or rules]." (Citation omitted; internal quotation marks omitted.) Id. In considering the text of § 2-32 (a) (2) (E), our Supreme Court already has determined that the six year limitation period set forth in § 2-32 (a) (2) (E) is mandatory and that, "[i]f

there is no claim that one of the enumerated exceptions to § 2-32 (a) (2) (E) applies . . . then, even though § 2-32 (a) (2) does not expressly provide that the screening panel [of the defendant] must dismiss a claim that is untimely under § 2-32 (a) (2) (E), untimely claims are categorically barred." Id., 388. The plaintiff contends that this means that the defendant has no subject matter jurisdiction over an untimely complaint. We disagree.

"Rules of practice . . . do not ordinarily define subject matter jurisdiction. . . . General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings . . . . *Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Psaki* v. *Karlton*, 97 Conn. App. 64, 70, 903 A.2d 224 (2006). Although the Supreme Court, in *Elder*, stated that the six year period of limitation in Practice Book § 2-32 (a) (2) (E) is "mandatory"; *Elder*, supra, 325 Conn. 389; and that "untimely claims are categorically barred"; id., 388; General Statutes § 51-90 et seq. contains neither a period of limitation nor an indication that any period of limitation set by the rules of practice could affect the subject matter jurisdiction of the defendant.[4] Although the court certainly has the inherent authority to regulate attorney conduct, it also has authority and jurisdiction granted to it by the legislature pursuant to § 51-90 et seq. Because the legislature did not establish any time constraint on the filing of a grievance complaint with the defendant in § 51-90 et seq., we conclude that the period of limitation imposed by the rules of practice do not act as a subject matter jurisdictional bar.[5] See *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 270. Accordingly, the plaintiff's claim that the defendant did not have subject matter jurisdiction over the 2011 grievance complaint filed against him fails.

Having determined that the period of limitation in Practice Book § 2-32 (a) (2) (E) is not subject matter jurisdictional, we next address the plaintiff's claim that the Superior Court improperly concluded that it did not have jurisdiction to consider the merits of the plaintiff's appeal from the defendant's refusal to vacate the 2013 sanction order. The defendant argues that the plaintiff's appeal, although fashioned as an appeal from its refusal to vacate the 2013 sanction order, ultimately was an attempt to circumvent the plaintiff's waiver of his right to appeal, and his failure to appeal, from that order in 2013. It also contends that there is no procedural mechanism for an attorney to file a motion to vacate a decision of the defendant four years after its decision becomes final, that the plaintiff did not have standing to appeal from the letters sent by the defendant, and that the issues the plaintiff sought to raise in the Superior Court were moot. Additionally, the defendant

argues that because the plaintiff did not timely appeal from the defendant's 2013 order and explicitly waived his right to do so, the Superior Court could afford him no relief, and the issues raised by the plaintiff in the Superior Court were nonjusticiable. We agree that the plaintiff's claims submitted to the Superior Court were nonjusticiable. Consequently, the Superior Court did not have jurisdiction to consider the plaintiff's appeal.

"[I]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Similarly, an issue regarding justiciability implicates this court's subject matter jurisdiction and raises a question of law over which our review is plenary.

"[S]ubject matter jurisdiction and justiciability are closely related concepts. Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . Justiciability involves the authority of the court to resolve actual controversies. . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . As we have recognized, justiciability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine. . . . Consequently, a court may have subject matter jurisdiction over certain types of controversies in general, but may not have jurisdiction in any given case because the issue is not justiciable." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 6–7, 917 A.2d 966 (2007).

"Collateral attacks on judgments are disfavored. . . . Unless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs in the tribunal's conclusive decision. . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. . . . The recurrent theme in our collateral attack cases is that the availability of an appeal is a significant aspect of the conclusiveness of a judgment." (Citations omitted.) *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 200–201, 544 A.2d 604 (1988). Consequently, a party who fails to appeal from an agency decision may not use a different action as a substitute for that appeal "to achieve a de novo determination of a matter upon which they failed

to take a timely appeal." *Honis* v. *Cohen*, 18 Conn. App. 80, 84, 556 A.2d 1028 (1989). A court properly may dismiss a case that constitutes an improper collateral attack on a judgment. *Glemboski* v. *Glemboski*, 184 Conn. 602, 605–606, 440 A.2d 242 (1981) (Superior Court properly dismissed case in which plaintiff attempted to mount procedurally impermissible collateral attack on prior decision of Probate Court). The reason for this is that the court can offer no practical relief to the party collaterally attacking the prior judgment, rendering the action nonjusticiable. See *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 527, 187 A.3d 1154 (2018).

Although the plaintiff's appeal to the Superior Court was not a "collateral attack" in the traditional meaning of that phrase because he did not seek to challenge the defendant's 2013 decision in an entirely different proceeding,[6] his attempt to challenge that decision by means of a motion to vacate and a motion for review, filed four years after the defendant's decision became final and the plaintiff chose not to appeal, has the same effect. See *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 853–58, 74 A.3d 1192 (2013) (defendant's claims that Superior Court lacked jurisdiction over motion to revive were in fact *or effect* collateral attacks on original judgment in same case); *Vogel* v. *Vogel*, 178 Conn. 358, 364, 422 A.2d 271 (1979) (plaintiff's attack, during 1978 contempt hearing, on subject matter jurisdiction of court to render 1959 judgment in same case, was impermissible collateral attack on 1959 judgment). This attempt to relitigate the validity of the defendant's 2013 decision is the functional equivalent of a collateral attack because the plaintiff is using a procedure not contemplated by the rules of practice to avoid the effects of his failure to appeal pursuant to the rules. Moreover, not only does Practice Book § 2-38 neither provide for the filing of a motion to vacate nor require that the defendant consider such a motion, the rules of practice also do not provide a right or mechanism for an attorney to appeal from the defendant's action or inaction on such a motion. See footnote 2 of this opinion.

"The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . *Unless it is entirely invalid and that fact is disclosed by an inspection of the record itself the judgment is invulnerable to indirect assaults upon it.*" (Emphasis in original; internal quotation marks omitted.) *Investment Associ-*

*ates* v. *Summit Associates, Inc.*, supra, 309 Conn. 858.

"It has long been accepted that a system of laws upon which individuals, governments and organizations rely to resolve disputes is dependent upon according finality to judicial decisions. Indefinite continuation of a dispute is a social burden. It consumes time and energy that may be put to other use, not only of the parties, but of the community as a whole. It rewards the disputatious. It renders uncertain the working premises upon which the transactions of the day are to be conducted. . . . The convention concerning finality of judgments has to be accepted if the idea of law is to be accepted, certainly if there is to be practical meaning to the idea that legal disputes can be resolved by judicial process. 1 Restatement (Second), Judgments, [i]ntroduction, p. 11 (1982). [A] party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. . . .

"As noted in the Restatement, the trial court may entertain a request for relief from judgment based upon a change in law occurring during the appeal period. 2 Restatement (Second), supra, § 71, comment (f). This power is, however, not a substitute for an appeal." (Citations omitted; internal quotation marks omitted.) *Marone* v. *Waterbury*, 244 Conn. 1, 11–12, 707 A.2d 725 (1998); see also *Investment Associates* v. *Summit Associates, Inc.*, supra, 309 Conn. 855.[7]

The plaintiff acknowledged that he could have appealed from the defendant's 2013 decision when he specifically waived that right as part of the disposition of that proceeding. Although there is no statutory right to appeal pursuant to § 51-90 et seq. from a decision of the defendant, the right to take such an appeal stems from the court's inherent authority to regulate the conduct of the attorneys who practice before it. See *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 232, 578 A.2d 1075 (1990) ("there is no statutory right of appeal from a reprimand, but . . . the trial court has authority to review such an order by virtue of its inherent supervisory authority over attorney conduct"). "Appeals to the court from the determinations of administrative, legislative, and quasi-judicial bodies are limited to a review of the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. . . . Although there is no statutory provision for an appeal from [a] reprimand ordered by the defendant, [there is] no reason why the right of an attorney to judicial review in a disciplinary matter should be any different than the process accorded other professionals in disciplinary matters before licensing and/or disciplinary boards."

(Citations omitted.) Id., 234–35.

"Judges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline members of the bar. . . . It is their unique position as officers and commissioners of the court . . . which casts attorneys in a special relationship with the judiciary and subjects them to its discipline. . . . [Section] 51-90 et seq. and Practice Book § 27B et seq. [now § 2-29 et seq.] are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. . . . [D]isciplinary [proceedings] are taken primarily for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. . . . The end result of these proceedings is a judgment from which an appeal lies to this court." (Citations omitted; internal quotation marks omitted.) Id., 232–33. "Although the statewide grievance committee is not an administrative agency . . . the court's review of its conclusions is similar to the review afforded to an administrative agency decision." (Citation omitted.) *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 811, 633 A.2d 282 (1993).

In the present case, the plaintiff claims that the court committed error in determining that it did not have jurisdiction because the plaintiff was attempting to relitigate the defendant's 2013 disciplinary order. He argues that he is not appealing from the order of discipline imposed by the defendant in 2013 but, rather, that he is appealing from the defendant's refusal to vacate the 2013 order or to reconsider its refusal to vacate that order. We are not persuaded.

The relief the plaintiff requested from both the defendant and the Superior Court was the vacatur of the 2013 disciplinary order from which he had failed to appeal, and as to which he, in fact, had waived his right to appeal. His motions filed with the defendant in 2017 and his attempted appeal from the defendant's rejection of those motions are nothing more than an attempted, impermissible end run to avoid the consequences of the waiver of his right to appeal, and his failure to appeal, four years earlier, using a procedure not contemplated by the relevant rules of practice or § 51-90 et seq. We, therefore, conclude that the court properly dismissed the plaintiff's appeal because it was an improper attempt to relitigate the 2013 decision of the defendant, and the court, therefore, could afford no remedy to the plaintiff. The matter was nonjusticiable.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's motion to vacate consisted of one paragraph, which provided: "The [plaintiff] hereby requests that the discipline imposed in the decision of the reviewing committee of the [defendant] in the above-captioned matter be vacated pursuant to the recently published case of *Disciplinary Counsel* v. [*Elder*, supra, 325 Conn. 378]."

[2] Practice Book § 2-38 provides: "(a) *A respondent may appeal to the*

*Superior Court a decision by the Statewide Grievance Committee or a reviewing committee imposing sanctions or conditions against the respondent, in accordance with Section 2-37 (a). A respondent may not appeal a decision by a reviewing committee imposing sanctions or conditions against the respondent if the respondent has not timely requested a review of the decision by the Statewide Grievance Committee under Section 2-35 (k).* Within thirty days from the issuance, pursuant to Section 2-36, of the decision of the Statewide Grievance Committee, the respondent shall: (1) file the appeal with the clerk of the Superior Court for the judicial district of Hartford and (2) mail a copy of the appeal by certified mail, return receipt requested or with electronic delivery confirmation, to the Office of the Statewide Bar Counsel as agent for the Statewide Grievance Committee and to the Office of the Chief Disciplinary Counsel.

"(b) Enforcement of a final decision imposing sanctions or conditions against the respondent pursuant to Section 2-35 (i) or Section 2-35 (m), including the publication of the notice of a reprimand in accordance with Section 2-54, shall be stayed for thirty days from the issuance to the parties of such decision. If within that period the respondent files with the Statewide Grievance Committee a request for review of the reviewing committee's decision, the stay shall remain in effect for thirty days from the issuance by the Statewide Grievance Committee of its final decision pursuant to Section 2-36. If the respondent timely commences an appeal pursuant to subsection (a) of this section, such stay shall remain in full force and effect until the conclusion of all proceedings, including all appeals, relating to the decision imposing sanctions or conditions against the respondent. If at the conclusion of all proceedings, the decision imposing sanctions or conditions against the respondent is rescinded, the complaint shall be deemed dismissed as of the date of the decision imposing sanctions or conditions against the respondent. An application to terminate the stay may be made to the court and shall be granted if the court is of the opinion that the appeal is taken only for delay or that the due administration of justice requires that the stay be terminated.

"(c) Within thirty days after the service of the appeal, or within such further time as may be allowed by the court, the statewide bar counsel shall transmit to the reviewing court a certified copy of the entire record of the proceeding appealed from, which shall include the grievance panel's record in the case, as defined in Section 2-32 (i), and a copy of the Statewide Grievance Committee's record or the reviewing committee's record in the case, which shall include a transcript of any testimony heard by it or by a reviewing committee which is required by rule to be on the record, any decision by the reviewing committee in the case, any requests filed pursuant to Section 2-35 (k) of this section, and a copy of the Statewide Grievance Committee's decision on the request for review. By stipulation of all parties to such appeal proceedings, the record may be shortened. The court may require or permit subsequent corrections or additions to the record.

"(d) The appeal shall be conducted by the court without a jury and shall be confined to the record. If alleged irregularities in procedure before the Statewide Grievance Committee or reviewing committee are not shown in the record, proof limited thereto may be taken in the court. The court, upon request, shall hear oral argument.

"(e) The respondent shall file a brief within thirty days after the filing of the record by the statewide bar counsel. The disciplinary counsel shall file his or her brief within thirty days of the filing of the respondent's brief. Unless permission is given by the court for good cause shown, briefs shall not exceed thirty-five pages.

"(f) Upon appeal, the court shall not substitute its judgment for that of the Statewide Grievance Committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) in violation of constitutional provisions, rules of practice or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the Statewide Grievance Committee or take such other action as may be necessary. For purposes of further appeal, the action taken by the Superior Court hereunder is a final judgment.

"(g) In all appeals taken under this section, costs may be taxed in favor of the Statewide Grievance Committee in the same manner, and to the same extent, that costs are allowed in judgments rendered by the Superior Court. No costs shall be taxed against the Statewide Grievance Committee, except that the court may, in its discretion, award to the respondent reasonable fees and expenses if the court determines that the action of the committee was undertaken without any substantial justification. 'Reasonable fees and expenses' means any expenses not in excess of $7500 which the court finds were reasonably incurred in opposing the committee's action, including court costs, expenses incurred in administrative proceedings, attorney's fees, witness fees of all necessary witnesses, and such other expenses as were reasonably incurred." (Emphasis added.)

[3] The plaintiff argues in both his appellate brief and his reply brief that "[t]here is no dispute in this case that the misconduct alleged occurred more than six years before the subject grievance complaint was filed." The defendant, however, clearly addressed this matter in its appellate brief: "Although the plaintiff alleges . . . [in] his brief that '[t]here is no dispute in this case that the misconduct alleged occurred more than six years before the subject grievance complaint was filed,' the defendant does not concede that there is no such dispute, as there may, arguably, exist circumstances which tolled the six year statute of limitations." We note, for example, that the plaintiff's interactions with Longo regarding the money originally loaned in 2001 continued into 2013, more than one year after Longo filed his grievance complaint.

[4] In particular, General Statutes § 51-90e provides: "(a) Any person may file a written complaint alleging attorney misconduct. A grievance panel may, on its own motion, initiate and file a written complaint alleging attorney misconduct. A complaint against an attorney shall be filed with the State-Wide Bar Counsel. Within five working days of the receipt of a complaint the State-Wide Bar Counsel shall:

"(1) Forward the complaint to the appropriate grievance panel as determined under rules of court; and

"(2) Notify the complainant and the respondent, by certified mail, return receipt requested, of the panel to which the complaint was forwarded. The notification to the respondent shall be accompanied by a copy of the complaint.

"(b) The respondent shall have the right to respond within ten days of receipt of notification to the grievance panel to which the complaint has been referred.

"(c) The State-Wide Bar Counsel shall keep a record of all complaints filed with him. The complainant and the respondent shall notify the State-Wide Bar Counsel of any change of address or telephone number during the pendency of the proceedings on the complaint.

"(d) If for good cause shown, a grievance panel declines, or is unable pursuant to sections 51-90 to 51-91b, inclusive, to investigate a complaint referred to the panel, such panel shall forthwith return the complaint to the State-Wide Bar Counsel to be referred by him immediately to another panel. The State-Wide Bar Counsel shall give notice of such referral to the complainant and the respondent by certified mail, return receipt requested."

[5] General Statutes § 51-90a provides: "In addition to any other powers and duties set forth in sections 51-90 to 51-91b, inclusive, the State-Wide Grievance Committee shall have the power and duty to: (1) Adopt rules for procedure not inconsistent with the general statutes or rules of court; (2) investigate and present to the court of proper jurisdiction any person deemed in contempt under section 51-88; and (3) adopt rules for grievance panels to carry out their duties which are not inconsistent with the general statutes or rules of court."

[6] "A collateral attack is an attack upon a judgment, decree or order offered *in an action or proceeding other than that in which it was obtained,* in support of the contentions of an adversary in the action or proceeding, as where the judgment is offered in support of a title or as a foundation for applying the doctrine of res judicata. 46 Am. Jur. 2d, Judgments § 630 [1969]; see also F. James, Civil Procedure § 11.5, pp. 533–34." (Emphasis in original.) *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 15 Conn. App. 504, 511–12, 545 A.2d 579 (1988).

[7] We recognize that neither the defendant nor the court used the phrase "collateral attack" in analyzing whether the Superior Court had jurisdiction over the plaintiff's appeal. Nevertheless, the court concluded that it lacked jurisdiction because the plaintiff did not timely appeal from the 2013 decision of the defendant, and his appeal from the defendant's actions or inactions

on his motion to vacate and motion for review was "the functional equivalent of an appeal from the underlying decision," i.e., an attempt to mount the equivalent of a collateral attack on the underlying judgment. See *Vogel* v. *Vogel*, supra, 178 Conn. 364. Similarly, the defendant argues that the plaintiff's appeal to the Superior Court was nonjusticiable because he did not timely appeal from the defendant's 2013 order but is attempting, instead, to use a nonexistent procedure to challenge that order. In so arguing, the defendant has described an impermissible collateral attack, even though it has not attached that label to its argument.

---