FRANCIS D. ANGIOLILLO ET AL. *v.* TERRY L.
BUCKMILLER ET AL.
(AC 27248)
(AC 27658)

DiPentima, Lavine and Dupont, Js.

Argued March 20—officially released July 24, 2007

*Eddi Z. Zyko*, for the appellants (plaintiffs).

*Christopher Y. Duby*, with whom, was *Eugene A. Skowronski*, for the appellee (defendant Charles Angiolillo).

*Eileen R. Becker*, with whom, on the brief, was *W. Glen Pierson*, for the appellees (named defendant et al.)

*Opinion*

DiPENTIMA, J. This unfortunately complicated action arose subsequent to the interment and reinterment of a member of a large, extended family. In consolidated appeals, the plaintiffs Francis D. Angiolillo and his wife, Bonita Angiolillo,[1] claim that the trial court

---

[1] For clarity, "plaintiff" in its singular form in this opinion refers to Francis D. Angiolillo, the nephew of the decedent.

(1) improperly rendered summary judgment in favor of several of the defendants, Charles Angiolillo and other defendants hereinafter referred to as the Buckmiller defendants: Terry L. Buckmiller, Buckmiller Brothers Funeral Home (funeral home) and Michael Ward, and (2) improperly dismissed another defendant, Joseph A. Corona, as a party to the case. We affirm the judgment of the trial court.[2]

The following facts and procedural history are relevant to our resolution of the plaintiffs' appeal. The plaintiff is a member of a large family residing in Naugatuck. He is one of three children of William Angiolillo and Caroline Angiolillo. His paternal grandmother, Mary Angiolillo, had six children in addition to William Angiolillo: Charles Angiolillo, Dominic Angiolillo (decedent), Francis Angiolillo, Joseph Angiolillo, Catherine Angiolillo and Lena Angiolillo. Of those six aunts and uncles of the plaintiff, three uncles are mentioned in this appeal: Charles Angiolillo, who is a defendant; Dominic Angiolillo, the decedent, whose cremains were interred in

---

[2] After the jury had returned a plaintiff's verdict on the only counts tried—the plaintiff's claims of negligence and negligence per se against the Buckmiller defendants—but before the court's January 30, 2006 ruling on the motion for a collateral source reduction filed by the Buckmiller defendants, the plaintiffs filed an appeal on December 28, 2005, with the docket number AC 27248. The issues raised by the plaintiffs in their preliminary statement of issues were whether the trial court properly granted the defendants' motion for summary judgment and whether the court improperly determined that Corona was not a defendant in this action.

Subsequent to the court's granting of the Buckmiller defendants' motion for collateral source reduction, the Buckmiller defendants filed a motion to dismiss the plaintiffs' appeal for lack of subject matter jurisdiction. Because a final judgment as to the Buckmiller defendants was not rendered until after the collateral source issue had been decided, we granted the Buckmiller defendants' motion to dismiss as to those portions of the appeal relating to the plaintiff's claims against the Buckmiller defendants. We also granted the plaintiffs' motion for permission to file a late appeal as to the Buckmiller defendants. An appeal was filed from the court's rendering of summary judgment and the court's dismissal of Corona as a defendant. The docket number in this appeal is AC 27658. Thereafter, we granted the plaintiffs' motion to consolidate the appeals.

the grave site; and Francis Angiolillo, who shares the same name as his nephew, the plaintiff.

The plaintiffs resided in Naugatuck until 1998, when they relocated to Florida. Following the death of his father William Angiolillo, the plaintiff received ownership of a cemetery plot containing four graves in St. James Cemetery (cemetery) in Naugatuck. Buried in two of the graves on the cemetery plot are William Angiolillo and Mary Angiolillo, the father and grandmother of the plaintiff, with the remaining two graves reserved for the plaintiffs. The cemetery plot is solely in the name of the plaintiff.

On January 3, 2000, the decedent died. His widow, Rose M. Angiolillo, asked Terry Buckmiller, one of the owners of the funeral home, to arrange for the funeral. She informed the funeral home that the decedent had wanted to be cremated and buried with his mother, Mary Angiolillo. Because the decedent was to be cremated, this could be accomplished by burying his cremains in the same grave as his mother in an eight by eight inch hole at the head of her grave site. Before this could be accomplished, the owner of the cemetery plot needed to give permission.

When the Buckmiller defendants contacted the cemetery, Terry Buckmiller was informed that the cemetery plot was owned by Francis Angiolillo, the plaintiff's uncle. The cemetery then forwarded to Terry Buckmiller the required form, an application for permission to open grave or crypt, to be completed by the owner of the grave site. Terry Buckmiller understood that Francis Angiolillo, the brother of the decedent, had given permission to allow the burial of the decedent's cremains in the grave site.

In order to facilitate the arrangements for the family, Terry Buckmiller, believing he had permission of the cemetery plot owner, executed the application on

behalf of Francis Angiolillo and submitted the application to the cemetery. Terry Buckmiller and Ward, an employee of the funeral home, signed as witnesses. Corona notarized the application on January 5, 2000. Thereafter, the decedent's cremains were interred at the head of his mother's grave.

Approximately ten months later, the decedent's widow, consulted with a monument company to place a marker on the decedent's grave. The monument company, in seeking to obtain permission to disturb the grave site, was informed that the plaintiff was the owner of the cemetery plot. When the company sent the required forms to him, the plaintiff first learned of the interment of the decedent. Both plaintiffs admit in their depositions that they did not attend the funeral or burial of the decedent and did not know who had made the arrangements. As soon as Terry Buckmiller learned that the plaintiffs had objections to the cremains of the decedent being interred in the grave in which Mary Angiolillo was buried, he arranged for the cremains to be disinterred and reinterred in another part of the cemetery. At no time were the two graves reserved for the plaintiffs opened or disturbed.

As a result of the claimed wrongful burial of the decedent, the plaintiffs brought a ninety count amended complaint in January, 2003, alleging violations of the notary public statute, General Statutes § 3-94*l*, negligence, negligence per se, common-law recklessness, intentional infliction of emotional distress, negligent infliction of emotional distress, violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., as well as 42 U.S.C. § 1983, and fraud against each of the defendants. The counts alleging violations of 42 U.S.C. § 1983 were later withdrawn.

On August 8, 2005, the Buckmiller defendants filed a combined motion for summary judgment. The Buckmiller defendants moved for summary judgment on all of the claims against them by the plaintiffs, except for the plaintiff's claims of negligence and negligence per se. On August 17, 2005, Charles Angiolillo also filed a motion for summary judgment seeking judgment on all counts of the complaint as to him. On December 13, 2005, the trial court filed its memorandum of decision granting Charles Angiolillo's motion for summary judgment as to all counts against him and granting the Buckmiller defendants' motion for summary judgment on all counts submitted. Judgment entered accordingly for Charles Angiolillo and the Buckmiller defendants on all counts, except for the plaintiff's claims of negligence and negligence per se against the Buckmiller defendants, for which summary judgment was not requested.

On December 20, 2005, after a jury had been selected, the court ruled in open court that Corona, who had notorized the application for permission to open the grave, was not a party to the action because he had not been served and had never filed an appearance. On December 22, 2005, after a jury trial on the plaintiff's negligence claims against the Buckmiller defendants, the jury returned a plaintiff's verdict for him and awarded total damages of $10,000. The court accepted the verdict at the conclusion of the proceedings and thereafter granted the Buckmiller defendants' motion for a collateral source reduction of $995.[3] This appeal followed.

I

The plaintiffs first claim that the court improperly granted the motions for summary judgment of the Buckmiller defendants and Charles Angiolillo. We disagree.

---

[3] The jury verdict and the award of damages were not contested on appeal.

As a preliminary matter, we set forth the well established standard that governs appellate review of a trial court's decision to grant a motion for summary judgment. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment . . . as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pepitone* v. *Serman*, 69 Conn. App. 614, 618, 794 A.2d 1136 (2002).

### A

We first address whether the court properly granted the motion for summary judgment as to the Buckmiller defendants and analyze each count in turn.

### 1

The first claim against the Buckmiller defendants involved an alleged violation of § 3-94*l*,[4] which concerns the liability of a notary for damages proximately caused to a person by a notary's official misconduct. There is no genuine issue of material fact that Terry Buckmiller and Ward did not notarize the document at issue. The undisputed facts show that these two defendants signed

---

[4] General Statutes § 3-94*l* (a) provides in relevant part: "A notary public shall be liable to any person for all damages proximately caused to that person by the notary's official misconduct." The plaintiffs also claim that the Buckmiller defendants violated § 3-94*l* (a) (1), (2) and (6). The additional claims as to these subdivisions fail, as there are no such subdivisions to that statute.

as witnesses to the application to open the grave or crypt and that Corona notarized that application. Additionally, the plaintiffs provided no evidence that the funeral home was liable under the statute. Thus, the court properly rendered summary judgment as to this count.

2

Next, the court properly concluded that the plaintiffs' claims of common-law recklessness were insufficient as a matter of law. The conduct alleged to have been reckless does not rise to the level of conduct necessary to support a legally cognizable claim for recklessness, which requires an extreme departure from ordinary care. See *Dubay* v. *Irish*, 207 Conn. 518, 533, 542 A.2d 711 (1988). The plaintiffs, in the complaint, simply incorporated their allegations of negligence and labeled the conduct recklessness. "[N]egligence and wilful and wanton misconduct are separate and distinct causes of action. . . . There is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on." (Citations omitted; internal quotation marks omitted.) *Kostiuk* v. *Queally*, 159 Conn. 91, 94, 267 A.2d 452 (1970). Merely using the term "recklessness" to describe conduct previously alleged as negligence is insufficient as a matter of law. *Dumond* v. *Denehy*, 145 Conn. 88, 91, 139 A.2d 58 (1958). Thus, the court properly rendered summary judgment as to this count.

3

Third, the court properly determined that, as a matter of law, the alleged behavior did not fit within the criteria required to establish a claim premised on intentional

infliction of emotional distress. "In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional [distress] or that he knew or should have known that emotional distress was [the] likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 846, 888 A.2d 104 (2006). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) *Valentine* v. *LaBow*, 95 Conn. App. 436, 448–49, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006).

Viewing the evidence in the light most favorable to the plaintiffs, we conclude, as a matter of law, that there was no intent to inflict emotional distress and

that the actions of the Buckmiller defendants were not sufficiently extreme and outrageous as to give rise to a cause of action for intentional infliction of emotional distress. The plaintiffs alleged that Terry Buckmiller signed Francis Angiolillo's name on the application and that the funeral home and Ward collaborated or otherwise encouraged these actions. There was no evidence before the court that Terry Buckmiller intended to cause the plaintiffs distress by signing Francis Angiolillo's name on the application. Rather, there was evidence that he believed that he had the permission of the cemetery plot owner to execute the document and to effectuate the interment of the cremains. The plaintiff admitted in a deposition that he had no information that would suggest that Terry Buckmiller knew that he would have such a strong objection to the decedent's cremains being buried at the head of Mary Angiolillo's grave. Upon learning of the plaintiffs' objection to the burial site of the decedent's cremains, the Buckmiller defendants arranged for the cremains to be disinterred and reinterred in another part of the cemetery. The court properly determined that the behaviors set forth in the complaint could not be found by a reasonable fact finder to be extreme or outrageous.

4

Fourth, the court properly concluded that the plaintiffs' claim of negligent infliction of emotional distress as against the Buckmiller defendants was insufficient to defeat the motion for summary judgment. "[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. . . . This . . . test essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants.

If such [distress] were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable. Conversely, if the [distress] were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." (Internal quotation marks omitted.) *Larobina* v. *McDonald*, 274 Conn. 394, 410, 876 A.2d 522 (2005).

We cannot say that it was foreseeable that the plaintiffs reasonably would suffer severe emotional distress as a result of the conduct of the Buckmiller defendants. The decedent's widow informed the funeral home that the decedent wanted to be cremated and buried with his mother, Mary Angiolillo. Terry Buckmiller attempted to accomplish this by burying the decedent's cremains in the same grave as his mother in an eight by eight inch hole at the head of his mother's grave site. Believing that he had the permission of the owner of the cemetery plot, Terry Buckmiller executed an application to open the grave or crypt, albeit improperly. It was not foreseeable that the plaintiff would have such a strong objection to his uncle's cremains being buried there. Additionally, "[a]n individual making an emotional distress claim must show that a *reasonable person* would have suffered emotional distress . . . that . . . might result in illness or bodily harm . . . ." (Citation omitted; internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 755, 792 A.2d 752 (2002). In this case, the plaintiffs were not able to prove that a reasonable person would have reacted as they did. The burial of the cremains of the decedent did not interfere with the two grave sites reserved for the plaintiffs, and as soon as the Buckmiller defendants learned of the plaintiffs' objection, the cremains were removed and

buried in another portion of the cemetery. The Buckmiller defendants could not have foreseen that their conduct would have caused the plaintiffs' claimed distress.

## 5

Fifth, the court properly concluded that the plaintiffs' claims alleging violations of CUTPA fail. CUTPA provides in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). In determining whether a practice violates CUTPA, we are guided by the criteria set out in the Federal Trade Commission's so-called cigarette rule: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 155, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Id. "Although our Supreme Court repeatedly has stated that CUTPA does not impose the requirement of a consumer relationship . . . the court also has indicated that a plaintiff must have at least *some* business relationship with the defendant in order to state a cause of action under CUTPA." (Citation omitted; emphasis in original; internal quotation marks

omitted.) *Pinette* v. *McLaughlin*, 96 Conn. App. 769, 778, 901 A.2d 1269, cert. denied, 280 Conn. 929, 909 A.2d 958 (2006).

The plaintiffs failed to allege a cognizable claim under CUTPA. The transaction arranging for the burial of the cremains of the decedent occurred between the decedent's widow and the Buckmiller defendants. The plaintiffs did not know about the transaction until approximately ten months later when the decedent's widow arranged to have a marker placed on the decedent's grave. The court correctly concluded that no business relationship existed between the plaintiffs and the Buckmiller defendants to support the particular CUTPA violation alleged in the complaint.

6

The court properly rendered summary judgment as to the plaintiffs' claims of fraud against the Buckmiller defendants. "The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Billington* v. *Billington*, 220 Conn. 212, 217, 595 A.2d 1377 (1991). The plaintiffs' fraud claims fail as a matter of law because there was no evidence that the Buckmiller defendants made any false statement of fact to the plaintiffs on which the plaintiffs relied to their detriment. The plaintiffs admitted in their depositions that the Buckmiller defendants gave them no information that was false on which they relied. Accordingly, summary judgment on this count was appropriate.

B

Although the plaintiff's claims of negligence and negligence per se against the Buckmiller defendants

were tried, the court rendered summary judgment in favor of the Buckmiller defendants as to Bonita Angiolillo's claims of negligence and negligence per se. Bonita Angiolillo claims on appeal that this was improper. We disagree.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . If a plaintiff cannot prove all of those elements, the cause of action fails." (Citation omitted; internal quotation marks omitted.) *Roach* v. *Ivari International Centers, Inc.*, 77 Conn. App. 93, 99, 822 A.2d 316 (2003). "The existence of a duty is a question of law and [o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). Bonita Angiolillo cannot establish that the Buckmiller defendants owed her any duty. There was no relationship between the Buckmiller defendants and her that would give rise to such a duty.[5] In addition to the reasons set forth previously, all of Bonita Angiolillo's claims fail as a matter of law because she did not own the cemetery plots at issue, and her name was not signed or notarized on the document at issue.

---

[5] The plaintiff submitted an affidavit suggesting that he had an oral agreement with Bonita Angiolillo that gave her co-ownership of the cemetery plots. The retail installment contract, however, lists the plaintiff as the sole owner and provides that "this privilege of burial or entombment is not transferrable or assignable by act of law or otherwise, without the consent in writing of the [Catholic Cemeteries Association of the Archdiocese of Hartford, Inc.]." An oral agreement between the plaintiffs, therefore, would be invalid as a matter of law. "Whe[n] the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 760, 905 A.2d 623 (2006). "When the language of the agreement is clear and unambiguous, its meaning is a question of law subject to plenary review." *Histen* v. *Histen*, 98 Conn. App. 729, 733, 911 A.2d 348 (2006).

## C

We next address the plaintiffs' claim that the court improperly granted Charles Angiolillo's motion for summary judgment as to all counts against him. We disagree with the plaintiffs.

The plaintiffs' claims against Charles Angiolillo for violation of the notary public statute, § 3-94*l*, negligence, negligence per se, common-law recklessness, intentional infliction of emotional distress, negligent infliction of emotional distress, violations of CUTPA and fraud, arose out of the claimed misconduct by him as a notary. The court properly concluded that there was no issue of material fact as to Charles Angiolillo's alleged misconduct as a notary. The plaintiffs' never contradicted the statements made by Charles Angiolillo in his August 16, 2005 affidavit that he was not, nor has he ever been, a notary public under the laws of the state of Connecticut. Furthermore, Charles Angiolillo's name does not appear anywhere on the application at issue, and both plaintiffs admitted in their March 15, 2005 depositions that they had no knowledge or proof that Charles Angiolillo was involved in the funeral arrangements of the decedent. The plaintiffs made assertions against Charles Angiolillo with no supporting evidence. Therefore, the court correctly determined that the plaintiffs' claims against this defendant fail.

## II

The plaintiffs next claim that the court improperly dismissed the action as against Corona. We are not persuaded.

"The jurisdiction of the trial court is limited to those parties expressly named in the action coming before it. . . . Until one is given notice of the actions or proceedings against him and is thereby given opportunity to appear and be heard, the court has no jurisdiction

to proceed to judgment either for or against him even though it may have jurisdiction of the subject matter. One who is not served with process does not have the status of a party to the proceeding. . . . A court has no jurisdiction over persons who have not been made parties to the action before it. . . . [S]ervice of process on a party in accordance with the statutory requirements is a prerequisite to a court's exercise of in personam jurisdiction over that party. . . . [N]o principle is more universal than that the judgment of a court without jurisdiction is a nullity. . . . Such a judgment, whenever and wherever declared upon as a source of right, may always be challenged. . . . If a court has never acquired jurisdiction over a defendant or the subject matter . . . any judgment ultimately entered is void and subject to vacation or collateral attack." (Citations omitted; internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 165–67, 884 A.2d 12 (2005).

"A challenge to the jurisdiction of the court presents a question of law. . . . Our review of the court's legal conclusion is, therefore, plenary. . . . [T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Citation omitted; internal quotation marks omitted.) *Foster* v. *Smith*, 91 Conn. App. 528, 536, 881 A.2d 497 (2005). Our review of the trial court's factual findings is governed by the clearly erroneous standard of review. *Fontaine* v. *Thomas*, 51 Conn. App. 77, 82 n.7, 720 A.2d 264 (1998).

The original complaint, dated August 16, 2002, contained 126 counts, with counts one through nine against the defendant "John Doe One." The marshal's return of service, dated August 20, 2002, indicated that service of process was made on David Buckmiller at 82 Fairview Avenue, Naugatuck, who accepted service for

John Doe One. Thereafter, an amended complaint was filed, listing counts one through nine against Corona. On December 20, 2005, the court sua sponte ruled in open court that Corona was not a party to the action because he was never served and never filed an appearance.

Our careful review of the file supports the court's findings that a certificate of service on Corona was not filed, nor was an appearance filed for either John Doe One or Corona,[6] the named defendant in the amended complaint, nor was a default ever filed against Corona for failure to appear. The court concluded that there was no indication as to who John Doe One was at the time of the original complaint or that David Buckmiller had authority to accept service for anyone known as John Doe One. Additionally, notice of the amended complaint, which named Corona as a defendant, was

---

[6] The plaintiffs' attorney stated at oral argument before this court that he received in the mail an appearance form for Corona by Robert P. Hanahan, who was prior counsel in this case, and included a copy of that letter in the appendix to the plaintiffs' brief. The trial court apparently did not find such a form. The plaintiffs' attorney stated at oral argument that to his knowledge, the form was not in the file, and we are unable to find such a form in the file. "It is well settled that this court will not consider matters extrinsic to the formal record, such as evidence not offered at trial. . . . We will disregard documents of this nature in the appendix to the petitioner's appellate brief, as well as the petitioner's references to such documents in his brief." (Citation omitted.) *Daniels* v. *Commissioner of Correction*, 86 Conn. App. 62, 69, 859 A.2d 954 (2004).

Additionally, on December 20, 2005, before ruling that Corona was not a party to the action, the court asked the plaintiffs' attorney if there was anything else he wanted to bring to the court's attention. The plaintiffs' attorney offered the argument that during Corona's deposition, Hanahan stated that he represented Corona. Counsel for the Buckmiller defendants argued that it was not clear whether Hanahan represented Corona in terms of the deposition or the action. The plaintiffs' attorney stated that he should have included a copy of the deposition with his memorandum of law, illustrating that Corona is a defendant in the case, but did not. We are unable to find such a deposition in the file, and the plaintiffs did not address this issue in their brief.

provided only to counsel who had filed appearances for other defendants.

The plaintiffs argue that Corona waived any claim of ineffective service. The plaintiffs specifically argue that Corona is a party in this case by the fact that Robert Hanahan, a prior counsel in this case, included Corona in an answer that was filed on behalf of several of the defendants.

"The rule concerning appearances is a rule of convenience, and as such should be observed . . . however, there may be an actual appearance for all the purposes of a defense without an entry on the docket. . . . Additionally, [t]he entry of an appearance need not necessarily be made by filing a formal appearance form. . . . The rules of practice will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work an injustice." (Citations omitted; internal quotation marks omitted.) *Fontaine* v. *Thomas*, supra, 51 Conn. App. 81. The fact that Corona was included in an answer that was filed on behalf of several of the defendants does not indicate that he had made an appearance in fact and is distinguishable from cases concluding that such an appearance had been made. See *Beardsley* v. *Beardsley*, 144 Conn. 725, 730, 137 A.2d 752 (1957) (defendant voluntarily submitted to jurisdiction of court despite insufficient service where defendant filed general appearance, wrote letter to clerk asking to be informed of progress of case and wrote letter to court presenting his version of case); *Bauer* v. *Pounds*, 61 Conn. App. 29, 38–39, 762 A.2d 499 (2000) (by entry of general appearance under company name and assumed business name, and by defending case for company under assumed business name, counsel acknowledged company was defendant in action and that company submitted to court's jurisdiction); *Fontaine* v. *Thomas*, supra, 81–82 (letter to clerk of court in response to notice of default did not satisfy

minimum requirements of appearance under Practice Book § 3-3); *Iffland Lumber Co.* v. *Tucker*, 33 Conn. Sup. 692, 695, 368 A.2d 606 (1976) (defendant's filing of pleading that by affidavit denied substance of plaintiff's claim constituted appearance in fact).

On the basis of the record before the trial court, we conclude that the court properly dismissed the action against Corona.

The judgment is affirmed.

In this opinion the other judges concurred.