******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LOIS PATRICK *v.* 111 CLEARVIEW DRIVE, LLC, ET AL.
## (AC 45450)

Bright, C. J., and Elgo and Cradle, Js.

*Syllabus*

The plaintiff sought to quiet title to certain real property to which the defendant held title. B Co. had previously commenced a tax foreclosure action involving the property against, inter alia, J and H. During the pendency of the foreclosure action, the plaintiff filed multiple motions with the court attempting to intervene, alleging that she had acquired a two-thirds interest in the property on the death of J by descent as J's heir, and a one-third interest in the property by quitclaim deed from the heirs of H. A judgment of foreclosure by sale was rendered in the foreclosure action. The court thereafter denied the plaintiff's motion to intervene on behalf of her two-thirds interest in the property as untimely and dismissed her motion to open the foreclosure judgment on behalf of her one-third interest in the property as moot. Her additional attempts to litigate her alleged interest in the property were also unsuccessful, including an appeal to this court from the trial court's denial of her motion to reargue and reconsider the order approving the foreclosure sale. The plaintiff then commenced the present quiet title action. The defendant filed a motion to strike the plaintiff's complaint as legally insufficient. The trial court granted the motion to strike and rendered judgment dismissing the action for lack of subject matter jurisdiction after determining, sua sponte, that the plaintiff was collaterally attacking the foreclosure judgment. *Held:*

1. The trial court properly dismissed the plaintiff's action on the ground that it lacked subject matter jurisdiction to adjudicate her claims because they constituted an attempt to collaterally attack a prior judgment and were, therefore, moot and nonjusticiable:

   a. The plaintiff could not prevail on her claim that, because she was unsuccessful in intervening in the foreclosure action on behalf of her two-thirds interest in the property, she was denied a constitutionally protected right to be heard prior to the deprivation of that property, which would entitle her to challenge the validity of the foreclosure judgment: in the foreclosure action, the plaintiff did not appeal from the denial of her motion to intervene and did not appeal from that decision when she appealed from the court's order denying her motion to reconsider its approval of the foreclosure sale, and, even if she had appealed after the foreclosure judgment had been rendered, her appeal likely would have been dismissed as moot, as allowing the plaintiff to challenge the foreclosure judgment in a new action when she failed to appeal from the denial of her motion to intervene in the foreclosure action was what made her collateral attack improper; accordingly, the trial court's decision to not allow the plaintiff to collaterally attack the foreclosure judgment did not deprive the plaintiff of her due process rights, as she had sufficient process available in the form of an appeal from the denial of her motion to intervene in the foreclosure action.

   b. The plaintiff could not prevail on her claim that, because H never received proper notice of the foreclosure action, the foreclosure judgment did not have preclusive effect against a collateral attack as to H's one-third interest in the property because that judgment was null against a party who was not properly served: even if it is assumed that H was not properly served in the foreclosure action, the plaintiff already sought to advance her claim relating to the alleged lack of personal jurisdiction over H in that action in her motion to open the foreclosure judgment and subsequent motion to reconsider, and, although a judgment rendered without jurisdiction is subject to direct or collateral attack, a litigant cannot utilize both processes; moreover, in the present case, the court denied the plaintiff's motion to open the foreclosure judgment, the plaintiff did not seek to intervene based on her one-third interest in the property, and she did not appeal from the dismissal of her motion to open in the foreclosure action; accordingly, because the plaintiff had an

opportunity to challenge the foreclosure judgment directly by way of an appeal from the judgment dismissing her motion to open, her attempt to utilize the present action as a substitute for such an appeal was procedurally impermissible.

2. The plaintiff could not prevail on her claim that the trial court improperly failed to adjudicate whether she was an omitted party from the foreclosure action pursuant to statute (§ 49-30); there was no need for B Co. to bring an omitted party action pursuant to § 49-30 to foreclose the plaintiff's purported interests in the property because the plaintiff, albeit unsuccessfully, had already attempted to challenge the foreclosure judgment on the basis of those interests, and, once those attempts failed and the plaintiff did not timely appeal from the court's orders rejecting her claims, she became bound by the foreclosure judgment, and, therefore, there was no reason to resort to § 49-30.

Argued September 14, 2023—officially released March 26, 2024

*Procedural History*

Action seeking to quiet title to certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Welch, J.*, granted the named defendant's motion to strike the complaint and rendered judgment dismissing the action, from which the plaintiff appealed to this court. *Affirmed.*

*Earle Giovanniello*, for the appellant (plaintiff).

*Jason P. Gladstone*, for the appellee (named defendant).

*Opinion*

ELGO, J. This appeal arises from the dismissal of a quiet title action. The plaintiff, Lois Patrick, initiated the action against the defendant 111 Clearview Drive, LLC,[1] alleging that she has an interest in certain real property located in Bridgeport, as to which the defendant holds title. After a hearing on the defendant's motion to strike the plaintiff's amended complaint, the trial court dismissed the action for lack of subject matter jurisdiction after determining, sua sponte, that the plaintiff was making an improper collateral attack on a prior judgment. On appeal, the plaintiff claims that the court (1) improperly concluded that it lacked subject matter jurisdiction to adjudicate the quiet title action because the plaintiff was collaterally attacking an underlying foreclosure action, and (2) failed to adjudicate whether the plaintiff may be considered an omitted party under General Statutes § 49-30. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On August 29, 2016, Benchmark Municipal Tax Services, Ltd. (Benchmark), recorded a notice of lis pendens on the Bridgeport land records for the property known as 44 Wentworth Street (property).[2] On September 26, 2016, Benchmark commenced a tax foreclosure action involving the property against Erma Jean Roundtree (Erma Jean), Eunice H. Roundtree (Eunice), and others not relevant to this quiet title action. See *Benchmark Municipal Tax Services, Ltd.* v. *Roundtree*, Superior Court, judicial district of Fairfield, Docket No. CV-16-6059553-S (*Benchmark* action and/or *Benchmark* judgment). The plaintiff was not a named party in the *Benchmark* action. A judgment of foreclosure by sale was rendered in the *Benchmark* action on December 12, 2016. After the judgment was opened, a second judgment of foreclosure by sale was rendered on December 4, 2017, and the court ordered a sale date of May 5, 2018. The sale of the property proceeded as scheduled, with Khurram Ali emerging as the successful bidder. The court approved the sale on August 28, 2020, and Ali conveyed the property to the defendant on February 6, 2021, by quitclaim deed. During and after the pendency of the *Benchmark* action, the plaintiff filed multiple motions with the court in an attempt to intervene, asserting an ownership interest in the property. The plaintiff claimed that she had acquired a two-thirds interest in the property on October 29, 2017, upon the death of Erma Jean by descent as Erma Jean's only heir, and a one-third interest in the property by quitclaim deed on April 17, 2021, from the heirs of Eunice, who died on June 5, 2020. The court denied the plaintiff's motion to intervene on behalf of the two-thirds interest in the property as untimely and dismissed the plaintiff's May 10, 2021 motion to open and vacate the *Benchmark* judgment on behalf of the

one-third interest in the property as moot.[3] The plaintiff made additional attempts to litigate her alleged interest in the property, all of which were unsuccessful.[4]

The plaintiff commenced this quiet title action in May, 2021, and, in July, 2021, filed a revised complaint in accordance with General Statutes § 47-31[5] regarding her alleged interests in the property. The defendant filed a motion to strike,[6] alleging that "the plaintiff has failed to state a legally sufficient revised complaint and [was] barred" from pursuing her claim on five grounds.[7] The accompanying memorandum of law in support of the motion to strike argued, inter alia, that the plaintiff's two-thirds interest in the property, purportedly acquired as Erma Jean's heir, was "moot" due to a failure to "successfully appeal the [*Benchmark*] judgment . . . ." The plaintiff filed a memorandum of law in opposition to the motion to strike, in which she rebutted each of the five grounds alleged in the defendant's motion to strike. The plaintiff also proffered that the prior foreclosure judgment in the *Benchmark* action had not foreclosed the one-third interest in the property that she received by quitclaim deed because the predecessor in interest, Eunice, had "not been properly served" in that action and, thus, was an omitted party.

On January 18, 2022, the court held a hearing on the motion to strike. During that hearing, the court inquired if the defendant's allegation that the court no longer had subject matter jurisdiction over the property due to the transfer of title following the approval of the foreclosure sale was, in fact, an argument that the plaintiff's quiet title action was a collateral attack on the judgment. The defendant's counsel answered affirmatively. The plaintiff's counsel responded by stating that the present quiet title action was not a collateral attack "because [the *Benchmark* judgment is not] effective against somebody who wasn't properly served."

In a memorandum of decision issued on March 7, 2022, the court dismissed this action as "an improper collateral attack on the foreclosure judgment." Citing to *Rider* v. *Rider*, 200 Conn. App. 466, 479, 239 A.3d 357 (2020), the court stated that the plaintiff " 'must resort to direct proceedings to correct perceived wrongs. . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal.' " The court also raised concerns regarding subject matter jurisdiction, citing *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 911 A.2d 712 (2006), for the proposition that "[a] court lacks discretion to consider the merits of a case over which it is without [subject matter] jurisdiction . . . ." (Internal quotation marks omitted.) Id., 533. In response, the plaintiff filed a motion to reargue the dismissal of the quiet title action, which the court denied, and this appeal followed.

"A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial

court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Stones Trail, LLC* v. *Weston*, 174 Conn. App. 715, 735, 166 A.3d 832, cert. dismissed, 327 Conn. 926, 171 A.3d 59 (2017), and cert. denied, 327 Conn. 926, 171 A.3d 60 (2017).

The court characterized the quiet title action as "an improper collateral attack on the [*Benchmark*] judgment" and justified its dismissal by citing *Peck* v. *Statewide Grievance Committee*, 198 Conn. App. 233, 248, 232 A.3d 1279 (2020), stating: "A court properly may dismiss a case that constitutes an improper collateral attack on a judgment. . . . The reason for this is that the court can offer no practical relief to the party collaterally attacking the prior judgment, rendering the action nonjusticiable." (Citation omitted.) Accordingly, the court concluded that it lacked subject matter jurisdiction over the quiet title action because the collateral attack rendered the action nonjusticiable.

Our review of the record focuses on whether the court's determination that it lacked subject matter jurisdiction was legally and logically correct. In this regard, we are mindful that "[i]t is well established that this court may rely on any grounds supported by the record in affirming the judgment of a trial court." *State* v. *Burney*, 288 Conn. 548, 560, 954 A.2d 793 (2008).

On appeal, the plaintiff claims that the court improperly concluded that it lacked subject matter jurisdiction to adjudicate the quiet title action. Before addressing the plaintiff's specific claims, we set forth the relevant legal principles regarding the trial court's subject matter jurisdiction.

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *CHFA-Small Properties, Inc.* v. *Elazazy*, 157 Conn. App. 1, 14, 116 A.3d 814 (2015).

As a court of general jurisdiction, the Superior Court is competent to entertain quiet title actions. Quiet title actions are governed by § 47-31 (f), which provides in relevant part: "The court shall hear the several claims and determine the rights of the parties . . . and render judgment determining the questions and disputes and

quieting and settling the title to the property." See also, e.g., *CHFA-Small Properties, Inc.* v. *Elazazy*, supra, 157 Conn. App. 14 (trial court had subject matter jurisdiction over quiet title action). Accordingly, the Superior Court has subject matter jurisdiction to adjudicate quiet title actions generally.

A court, however, "may have subject matter jurisdiction over certain types of controversies in general, but may not have jurisdiction in any given case because the issue is not justiciable." (Internal quotation marks omitted.) *Peck* v. *Statewide Grievance Committee*, supra, 198 Conn. App. 247. "[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine." (Internal quotation marks omitted.) Id. With these principles in mind, we consider the plaintiff's claims.

I

The plaintiff challenges the court's propriety in dismissing the quiet title action after determining that the action was an improper collateral attack on the *Benchmark* judgment.[8] The plaintiff argues that, because she was unsuccessful in intervening in the *Benchmark* action on behalf of her two-thirds interest in the property from Erma Jean, she was denied a constitutionally protected right to be heard prior to the deprivation of property, which would entitle her to now challenge the validity of that judgment. The plaintiff also argues that there is no collateral attack on the prior judgment regarding the one-third interest in the property that she acquired from Eunice's heirs because a judgment cannot be effective if it is rendered against a party who was never properly served. Because the plaintiff had opportunities to challenge the *foreclosure* judgment directly by way of an appeal in the *Benchmark* action, her quiet title action that was premised on her claimed interests in the property constitutes an impermissible collateral attack on the *Benchmark* judgment.

As an initial matter, we examine whether the court properly categorized the plaintiff's quiet title action as a collateral attack. "A collateral attack is an attack upon a judgment, decree or order offered in an action or proceeding other than that in which it was obtained, in support of the contentions of an adversary in the action or proceeding . . . ." (Emphasis omitted; internal quotation marks omitted.) *Stones Trail, LLC* v. *Weston*, supra, 174 Conn. App. 737.

Here, the second prayer for relief in the plaintiff's amended complaint in the quiet title action specifically asks the court to "[vacate] the foreclosure judgment in [the *Benchmark* action] . . . ." Initiating a new action with the goal of vacating a prior judgment from a different action is, by definition, a collateral attack on a judgment.[9]

Our Supreme Court has noted that "collateral attacks

on [final judgments] are disfavored . . . [because the] law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . [A] litigant . . . must resort to direct proceedings to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal." (Citations omitted; internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 771–72, 143 A.3d 578 (2016). The court further explained that "collateral attacks are strongly disfavored . . . because such belated litigation undermines the important principle of finality." (Internal quotation marks omitted.) Id., 786.

Although collateral attacks are strongly disfavored, the fact that an action constitutes a collateral attack does not warrant automatic dismissal of the action. Exceptions exist in rare cases in which "a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 771. Additionally, "[i]f a court has never acquired jurisdiction over a defendant [by proper service of process] . . . any judgment ultimately entered is void and subject to vacation or collateral attack." (Internal quotation marks omitted.) *Angiolillo* v. *Buckmiller*, 102 Conn. App. 697, 713, 927 A.2d 312, cert. denied, 284 Conn. 927, 934 A.2d 243 (2007). Furthermore, "[a] court properly may dismiss a case that constitutes an improper collateral attack on a judgment"; *Peck* v. *Statewide Grievance Committee*, supra, 198 Conn. App. 248; if "the court . . . [can] afford no remedy," which renders the matter moot and nonjusticiable. Id., 252. The issue thus becomes whether the plaintiff's collateral attack on the *Benchmark* judgment is permitted as one of the rare exceptions, or if the dismissal of this quiet title action was appropriate because the court could not afford a remedy, because the plaintiff failed to "resort to direct proceedings to correct perceived wrongs . . . ." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, supra, 322 Conn. 771.

Our review of that question of law is plenary. We therefore examine the record to determine whether the court's dismissal of the quiet title action as an improper collateral attack was legally and logically correct. We address separately each of the plaintiff's claimed interests in the property.

A

We first address the plaintiff's claim with respect to her two-thirds interest in the property that she purportedly acquired by descent from Erma Jean.

In support of her quiet title action, the plaintiff filed a revised complaint as is required by § 47-31 (b). The revised complaint asserts that Erma Jean's two-thirds interest in the property passed to the plaintiff on Octo-

ber 29, 2017, as the sole heir and equitable owner of the interest upon Erma Jean's death. By the time that the plaintiff received this interest, a judgment of foreclosure by sale had already been rendered on December 12, 2016. A second judgment of foreclosure by sale was then rendered on December 4, 2017. The plaintiff first moved to intervene in the *Benchmark* action on April 6, 2018, and simultaneously filed a motion to open and vacate the *Benchmark* judgment. The court denied those motions and noted in the denial of the motion to intervene that the "petition is not timely under [General Statutes] § 52-325 (a), which authorizes intervention after a notice of lis pendens is filed (in this case, filed on August 29, 2016, in the Bridgeport land records) and the application to intervene is filed 'prior to the date when the judgment or decree in such action is rendered.' This motion to intervene was filed on April 5, 2018, more than fifteen months after the entry of judgment of foreclosure by sale." The plaintiff did not appeal from the judgment of dismissal of her motion to intervene. Instead, the plaintiff filed another motion to open the judgment and vacate orders on September 8, 2020, which was dismissed on September 16, 2020, because the plaintiff was not a party to the underlying *Benchmark* action. On September 16, 2020, the plaintiff filed a motion to reargue and reconsider the order approving the sale of the property, which was denied on September 30, 2020. From that decision, the plaintiff filed an appeal with this court, which dismissed the appeal on January 13, 2021, for lack of standing as the plaintiff was not a party to the underlying *Benchmark* action.

The plaintiff now argues that, by denying the motion to intervene in the *Benchmark* action, the "court denied [her] the right to protect her interest in the property," amounting to a fundamental denial of due process under the fourteenth amendment to the United States constitution. The plaintiff states that she "was not a party to the underlying foreclosure action, was not allowed to intervene and was not allowed to appeal." The plaintiff further argues that, "[b]ecause [she] was not allowed to intervene in the [*Benchmark*] action, she should be allowed to question the validity of the [*Benchmark*] judgment" through this quiet title action. We are not persuaded.

"[T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, supra, 322 Conn. 771. Here, a direct appeal was the proper channel to test the validity of the court's May 1, 2018 denial of the plaintiff's motion to intervene in the

*Benchmark* action. Contrary to the plaintiff's assertion, nothing prevented her from appealing that decision. The law is clear that, if "[a]n unsuccessful applicant for intervention . . . can make a colorable claim to intervention as a matter of right [then] on appeal the court has jurisdiction to adjudicate both his claim to intervention as a matter of right and to permissive intervention." (Internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, 295 Conn. 194, 204, 990 A.2d 853 (2010). This court also has stated that "[m]ost postjudgment appeals filed by would-be intervenors will be moot because the relief sought, i.e., intervention into the underlying action, cannot be granted once the action has gone to judgment. . . . [T]o avoid potential mootness problems, would-be intervenors who have a colorable claim to intervention as a matter of right should appeal immediately from the denial of their motion to intervene." *Wallingford Center Associates* v. *Board of Tax Review*, 68 Conn. App. 803, 806 n.3, 793 A.2d 260 (2002).

In the *Benchmark* action, the plaintiff did not timely appeal from the denial of her motion to intervene. Nor did she appeal from that decision when she appealed from the court's order denying her motion to reconsider its approval of the sale of the property. Even if she had appealed after the judgment of foreclosure had been rendered, her appeal likely would have been dismissed as moot for the reasons we articulated in *Wallingford Center Associates*. See id. That being the case, allowing the plaintiff to now "question the validity" of the *Benchmark* judgment in a new action, when the plaintiff failed to appeal from the denial of her motion to intervene, is precisely what makes this collateral attack improper. "A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. . . . The recurrent theme in our collateral attack cases is that the availability of an appeal is a significant aspect of the conclusiveness of a judgment. . . . Consequently, a party who fails to appeal from [a] . . . decision may not use a different action as a substitute for that appeal to achieve a de novo determination of a matter upon which they failed to take a timely appeal. . . . A court properly may dismiss a case that constitutes an improper collateral attack on a judgment. . . . The reason for this is that the court can offer no practical relief to the party collaterally attacking the prior judgment, rendering the action nonjusticiable." (Citations omitted; internal quotation marks omitted.) *Peck* v. *Statewide Grievance Committee*, supra, 198 Conn. App. 247–48.

For these reasons, the trial court's decision to not allow the plaintiff to collaterally attack the *Benchmark* judgment in this action on the basis of Erma Jean's two-thirds interest in the property does not deprive the plaintiff of her due process rights. The plaintiff had sufficient process available to her in the form of an appeal from the denial of her motion to intervene in

the *Benchmark* action. Similarly, the availability of that appeal, which she did not pursue, means that the limited exceptions to the prohibitions on collateral attacks do not apply to any challenge to the judgment based on Erma Jean's two-thirds interest in the property. The trial court's dismissal for lack of subject matter jurisdiction based on the two-thirds interest in the property that the plaintiff acquired from Erma Jean was appropriate because the matter was moot, and thus nonjusticiable, as "the court can offer no practical relief to the party collaterally attacking the prior judgment . . . ." *Peck* v. *Statewide Grievance Committee*, supra, 198 Conn. App. 248.

B

The plaintiff also asserts that she acquired a one-third interest in the property via a quitclaim deed on April 17, 2021, from Eunice's heirs. She further alleges that Eunice never received proper notice of the foreclosure action. The plaintiff thus argues that the *Benchmark* judgment does not have preclusive effect against a collateral attack as to Eunice's one-third interest in the property because a prior judgment is null against a party who was not properly served.

The plaintiff's argument is not without merit. Although strongly disfavored, not all collateral attacks are impermissible. This court has noted that "[s]ervice of process on a party in accordance with the statutory requirements is a prerequisite to a court's exercise of in personam jurisdiction over that party. . . . If a court has never acquired jurisdiction over a defendant or the subject matter . . .  any judgment ultimately entered is void and subject to vacation or collateral attack." (Internal quotation marks omitted.) *Angiolillo* v. *Buckmiller*, supra, 102 Conn. App. 713.

If we take the facts alleged in the complaint as true, it follows that, if Eunice never received proper service of the foreclosure action, any judgment rendered in that action would be null as to her. The plaintiff's implied argument follows that, as the holder of Eunice's one-third interest in the property acquired by quitclaim deed from Eunice's heirs, she stands in Eunice's shoes and can assert that the judgment is null as to her also, and, thus, properly may collaterally attack the *Benchmark* judgment. We are not persuaded.

The problem with the plaintiff's argument is that she already sought to advance her claim based on the alleged lack of personal jurisdiction over Eunice in the *Benchmark* action in her May, 2021 motion to open and subsequent motion to reconsider. Thus, although a judgment rendered without jurisdiction is subject to direct or collateral attack, a litigant cannot utilize both processes. Indeed, when, as in the present case, "the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had

the opportunity to litigate the question of jurisdiction in the original action, and, if [she] did have such an opportunity, whether there are strong policy reasons for giving [her] a second opportunity to do so." (Emphasis omitted; internal quotation marks omitted.) *Sousa* v. *Sousa*, supra, 322 Conn. 772.

The court in the *Benchmark* action approved the sale on August 28, 2020, and the plaintiff acquired her one-third interest in the property from Eunice's heirs on April 17, 2021. On May 10, 2021, although the plaintiff had not been made a party to the foreclosure action, the plaintiff's counsel filed a motion to open and vacate the judgment of foreclosure by sale, asserting that Eunice was never served. In support of her motion to open, the plaintiff included an affidavit from Bernice Roundtree, the sister of Eunice, averring that Eunice was living in a nursing facility in Bridgeport in August, 2016, and that Eunice had not lived at the property after 2014. On June 2, 2021, the motion was dismissed as moot "[p]er oral record . . . ." On June 16, 2021, the plaintiff's counsel filed a motion to reconsider that dismissal, and on the same day the court entered an order stating that the court "reviewed this motion for reconsideration and is not changing its ruling on the underlying motion." The plaintiff neither sought to intervene based on her one-third interest in the property from Eunice, nor appealed from the dismissal of her motion to open in the *Benchmark* action. Accordingly, because the plaintiff had an opportunity to challenge the foreclosure judgment directly by way of an appeal from the judgment dismissing her motion to open in the *Benchmark* action, her attempt to use the underlying quiet title action as a substitute for that appeal is procedurally impermissible. See *Peck* v. *Statewide Grievance Committee*, supra, 198 Conn. App. 248 ("a party who fails to appeal from [a] . . . decision may not use a different action as a substitute for that appeal to achieve a de novo determination of a matter upon which they failed to take a timely appeal" (internal quotation marks omitted)).

We therefore conclude that the court properly dismissed the quiet title action because the plaintiff's claims based on both her two-thirds interest and her one-third interest in the property constitute impermissible collateral attacks on the *Benchmark* judgment and are, therefore, moot and nonjusticiable.

## II

The plaintiff's final argument is that the court's sua sponte dismissal denied her an opportunity to advance an omitted party argument pursuant to § 49-30, which could offer relief without disturbing the *Benchmark* judgment. The plaintiff argues that § 49-30 applies because "[n]o omitted party action has been brought to foreclose out [her] interest in the property," which was acquired "as heir to [Erma Jean's] estate and as the successor

in interest to [Eunice's] interest . . . ." The plaintiff's claim warrants little discussion.

Section 49-30 provides in relevant part: "When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in . . . such real estate . . . has been omitted or has not been foreclosed . . . because of improper service of process or for any other reason . . . [s]uch omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title."

There was no need for Benchmark to bring an omitted party action to foreclose the plaintiff's purported interests in the property because the plaintiff, albeit unsuccessfully, had already attempted to challenge the *Benchmark* judgment on the basis of those interests. Once those attempts failed and the plaintiff did not timely and properly appeal from the court's orders rejecting her claims, she became bound by the *Benchmark* judgment. Thus, there is no reason to resort to § 49-30.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Also named as defendants in the operative complaint were Khurram Ali; Benchmark Municipal Tax Services, Ltd.; city of Bridgeport; Water Pollution Control Authority for the City of Bridgeport; Department of Social Services; and Aquarion Water Company of Connecticut. A motion for default for failure to appear was granted against the defendants Department of Social Services and Aquarion Water Company of Connecticut. A motion for default for failure to plead was granted against the defendants Benchmark Municipal Tax Services, Ltd., city of Bridgeport, and Water Pollution Control Authority for the City of Bridgeport. Khurram Ali did not file an appellate brief or otherwise participate in this appeal. Accordingly, we refer to 111 Clearview Drive, LLC, as the defendant in this opinion.

[2] We note the well established principle that a court "may take judicial notice of the file in another case, whether or not the other case is between the same parties . . . ." (Citation omitted; internal quotation marks omitted.) *Rogalis*, *LLC* v. *Vazquez*, 210 Conn. App. 548, 556, 270 A.3d 120 (2022).

[3] On April 6, 2018, after acquiring the two-thirds interest in the property from Erma Jean, the plaintiff filed motions to intervene and to open and vacate the *Benchmark* judgment. Those motions were denied as untimely under General Statutes § 52-325 (a) on May 1, 2018, and the plaintiff did not appeal those determinations. On May 10, 2021, after obtaining Eunice's one-third interest in the property by quitclaim deed, the plaintiff filed a motion to open and vacate the *Benchmark* judgment. That motion was dismissed as moot "[p]er oral record" on June 2, 2021. On June 16, 2021, the plaintiff filed a motion to reconsider the court's dismissal of the motion to open and vacate the judgment. The court issued an order on June 16, 2021, stating that it had "reviewed this motion for reconsideration and [was] not changing its ruling on the underlying motion." The plaintiff did not appeal that order.

[4] The plaintiff's additional attempts to challenge the *Benchmark* judgment included the following. On August 31, 2020, the plaintiff filed a request to stay the proceedings until a legal representative could be appointed to represent the interests of Eunice, who died on June 5, 2020. That request was dismissed on September 16, 2020. The plaintiff filed another motion to open the judgment and vacate orders on September 8, 2020, which was dismissed on September 16, 2020, because the plaintiff was not a party to

the underlying action. On September 16, 2020, the plaintiff filed a motion to reargue and reconsider the order approving the sale of the property, which was denied on September 30, 2020. From that decision, the plaintiff filed an appeal with this court, which was dismissed on January 13, 2021, for lack of standing as the plaintiff was not a party to the underlying action.

[5] General Statutes § 47-31 (a) provides in relevant part: "An action [to settle title or claim an interest in real property] may be brought by any person claiming title to, or any interest in, real . . . property . . . against any person who may claim to own the property . . . or to have any interest in the property . . . for the purpose of determining such . . . interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property."

[6] A motion to strike is governed by Practice Book § 10-39, which provides in relevant part that it is to "be used whenever any party wishes to contest: (1) the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted; or (2) the legal sufficiency of any prayer for relief in any such complaint . . . ."

[7] In its motion to strike, the defendant enumerated five grounds that allegedly defeated, as a matter of law, the plaintiff's quiet title action: "(1) [General Statutes] § 49-15; (2) the failure to redeem the real property; (3) . . . the death of a mortgagor subsequent to the service of process is of no moment in resetting law days . . . (4) the heirs and devisees do not need to be substituted as parties after good service on the original mortgagor; [and] (5) . . . the plaintiff's failure to open or set aside the judgment within the statutorily allotted time."

[8] We note the unusual procedural posture of this case, to the extent that the court was presented with a motion to strike that raised an argument that the court lacked subject matter jurisdiction. Jurisdictional issues are more properly raised in a motion to dismiss. Nevertheless, a party may raise an issue of subject matter jurisdiction at any time. Further, although the defendant's motion to strike questioned whether the court had subject matter jurisdiction to consider the plaintiff's quiet title action, the motion did not explicitly argue that the quiet title action constituted a collateral attack on the *Benchmark* judgment. During the hearing on that motion, the court sua sponte raised that question, and it did not thereafter request that the parties brief the issue before ultimately dismissing the case. However, the plaintiff has not raised on appeal a claim of procedural error as a basis for reversal. Further, the defendant did raise the issue of mootness in its memorandum of law in support of the motion to strike, arguing that the plaintiff's two-thirds interest in the property was moot due to her failure to successfully appeal from the *Benchmark* judgment. Although the defendant's framing of the issue did not mention the phrase "collateral attack," the defendant's argument was substantively the same as the court's analysis.

As was discussed in *Peck* v. *Statewide Grievance Committee*, supra, 198 Conn. App. 247, mootness implicates justiciability. For a case to be justiciable, "practical relief to the complainant" must be available as the result of an adjudication. (Internal quotation marks omitted.) Id. In *Peck*, this court affirmed the trial court's dismissal as nonjusticiable because the plaintiff failed to appeal a prior order; id., 252; and, as a result, "the court [could] offer no practical relief to the party collaterally attacking the prior judgment, rendering the action nonjusticiable." Id., 248. As a result, "[a] court properly may dismiss a case that constitutes an improper collateral attack on a judgment"; id., 247; if "the court . . . [can] afford no remedy," which renders the matter moot and nonjusticiable. Id., 252. Here, the issue of mootness was raised by the defendant, and, because mootness and justiciability are questions of law, and the plaintiff failed to raise an argument on appeal of procedural error, we proceed to the merits of the claim.

[9] Black's Law Dictionary defines the phrase "collateral attack" as, inter alia, "[a]n attack on a judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective." Black's Law Dictionary (11th Ed. 2019) p. 329.

------------------------